[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12038
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-02960-AT

JASON JORDAN,

Plaintiff-Appellant,

versus

CITY OF UNION CITY, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 23, 2016)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Jason Jordan appeals from the district court's grant of summary judgment in

favor of the City of Union City, Georgia, ("Union City") in his employment

discrimination lawsuit filed pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*  Jordan, who has been diagnosed with generalized anxiety disorder, cyclothymic disorder (a mood disorder), and panic disorder, was a probationary police officer with the Union City Police Department. He was fired following a series of events on duty during which Jordan experienced heightened levels of anxiety causing another officer to believe Jordan needed immediate medical attention.  Following his termination, Jordan brought this action under the ADA, alleging he was wrongly fired on the basis of disability. The district court granted summary judgment to Union City, concluding that Jordan was not a "qualified individual" under the ADA because he failed to show that he could perform the essential functions of the police-officer position while attempting to mitigate the effects of an anxiety attack.  On appeal, Jordan argues that summary judgment was inappropriate because evidence of his qualifications and of the effects of his anxiety was in dispute.  After careful review, we affirm the district court.

## I.

After successfully completing the police academy, Jason Jordan joined Union City in early October 2012 as a probationary parole officer.[1]  As part of a

---

[1] In reviewing whether summary judgment was appropriate, we present the facts in the light most favorable to the non-moving party, Jordan, construing all reasonable inferences in his favor. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

2

six-month probationary period, new officers must complete the Field Training Officer Program ("FTO Program") by riding with a field training officer for at least sixty days. The FTO Program is designed to train officers on the City's policies and procedures, the law, responding to 911 calls, and initiating activity in the field.

Jordan completed the first part of this training with two supervisory officers, Marquis Grant and Walker Heard, on "morning watch" (midnight to 8:00 a.m.). Grant and Heard evaluated Jordan's performance through Daily Observation Reports ("DORs"), which were submitted to Captain Eugene Tate, who oversaw the training program. Of the 549 numeric scores Jordan received on the DORs, 491 (88%) were a 3 or 4 (out of 5), indicating largely satisfactory or positive performance reviews. Heard testified that Jordan did a "very good job" as a new police officer. While training with Grant and Heard, Jordan disarmed a man in possession of a firearm after a traffic stop, attempted to pursue fleeing suspects into a wooded area after a high speed chase, and took charge of a situation at an apartment complex, arresting three male suspects and taking them into custody.

In mid-November 2012, Jordan began training with another supervisory officer, Travis Crawl, on "evening watch" (4:00 p.m. to midnight). A few days into the new assignment, Jordan and Crawl were dispatched to a call on Raymond

Drive.[2]  When Jordan arrived at the call, he saw a large man standing on the front porch.  The man was yelling and appeared to have a gun in his hand.  Jordan ran to cover at an oak tree at some distance from the front of the house in order to investigate what was actually happening.  Once Crawl ran past him, Jordan realized that the person on the porch was a police officer.  Jordan then ran to the porch and arrived there at nearly the same time as Crawl.  When Jordan reached the porch, he assisted in detaining the individual they were there to detain—who was already on the ground but was resisting—by holding him down while other officers handcuffed him.

After the call, Crawl told Jordan he was disappointed that Jordan did not run up and get right in the action.  Crawl accused Jordan of hiding behind the tree and raised his voice while talking to Jordan about the situation.  While talking with Crawl, Jordan's anxiety became elevated and he "choked up."  Crawl asked Jordan if he was okay.  Jordan replied that he was fine and that his feelings were consistent with anxiety "episodes" or "attacks"[3] that he had had in the past.  Crawl asked if Jordan needed an ambulance.  Jordan responded that he did not, but Crawl told him that he was taking him to the fire station to get him evaluated.

---

[2] The details of this event are heavily disputed by the parties.  We credit Jordan's version of events as derived from his deposition testimony.  *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (*en banc*) ("[W]hen conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version.") (emphasis omitted).

[3] Jordan used the term "anxiety episode," but he indicated in his deposition testimony that this term was synonymous with "anxiety attack" or "panic attack."

Around this time, Crawl and Jordan were dispatched to a shots-fired call. Crawl diverted from the shots-fired call and took Jordan to the fire station for evaluation instead. After the EMS evaluated Jordan and informed him that he was "okay," Crawl told Jordan to have someone to pick him up so that he could go home for the day and that Jordan would meet with Captain Tate the next morning. Crawl also took Jordan's weapon, explaining that Tate had told him it was standard operating procedure to take a weapon if someone had a "mental condition or episode."

The following day, Jordan met with Captain Tate. After some discussion of the events the previous day, Captain Tate told Jordan that he would be fired that day unless he resigned. The captain told Jordan,

> I think you have anxiety issues because I've done a little investigating of my own and it's not the first time that that's happened. You had a situation that happened at the Academy that supposedly a thunderstorm came through [and] they had to call an ambulance for you. You've got some anxiety issues that you need to deal with . . . . It's not going to be here.

Jordan chose to resign under threat of firing.

## II.

After filing a charge of discrimination with the Equal Employment Opportunity Commission, Jordan filed suit against Union City in federal district court under the ADA, alleging that he had been discriminated against on the basis

of disability.  Jordan claimed that he was fired because Captain Tate regarded him as disabled, not that he was in fact disabled.

Despite ruling in his favor on several disputes, the district court ultimately concluded that Jordan had not shown he could perform the essential functions of the police-officer position, such as handling high-stress and emergency situations in a cool, calm, and collected manner.  The court found that Jordan's "unpredictable, unpreventable, uncontrollable" anxiety attacks could cause him to be temporarily unable to "handle high-stress situations while attempting to mitigate the effects of an anxiety attack."  Consequently, the district court granted summary judgment in favor of Union City.  Jordan now appeals.

## III.

We review an order granting summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1161-62 (11th Cir. 2006).  Where there is a conflict in the evidence, we resolve all reasonable doubts about the facts in favor of Jordan, the non-moving party.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine factual dispute exists if a reasonable jury could return a

6

verdict for the non-moving party.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

## IV.

Jordan contends that there are material issues of fact regarding his qualifications for the police-officer position that preclude entry of summary judgment.  He contends that the court improperly relied on Captain Tate's subjective evaluation of Jordan, which was based on disputed factual events, and that the court's construction of the evidence regarding Jordan's training was not the only reasonable one.  Further, Jordan argues, while his anxiety issues affected his ability to manage stress "to some unspecified degree," that "does not equate to being physically incapable of reacting and responding appropriately under stressful or dangerous circumstances."

The ADA prohibits discrimination by an employer "against a qualified individual on the basis of disability in regard to . . . discharge of employees" and any of the "terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To proceed under the ADA, "a plaintiff must show that, at the time of the adverse employment action, he had a disability, he was a qualified individual, and he was subjected to unlawful discrimination because of his disability."  *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014).  "Disability" under the ADA can be shown in three ways:  (a) having a physical or

mental impairment that substantially limits a major life activity; (b) having a record of such an impairment; and (3) being regarded as having such an impairment.[4] 42 U.S.C. § 12102(1).

A "qualified individual" is someone with a disability, who "with or without reasonable accommodation, can perform the essential functions" of the job.[5] 42 U.S.C. § 12111(8). Essential functions, in turn, are "fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000); *see* 29 C.F.R. § 1630.2(n)(1). We evaluate whether a function is "essential" on a case-by-case basis, considering several factors. *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000); *see* 29 C.F.R. § 1630.2(n)(2) (listing factors to consider). The ADA directs courts to consider "the employer's judgment as to what functions of a job are essential," such as the employer's written description for the job. *Davis*, 205 F.3d at 1305; *see* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3) (listing sources of evidence). We also look to the testimony of the

---

[4] Congress has directed that the ADA "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted." 42 U.S.C. § 12102(4)(A). Construing the ADA broadly, we agree with the district court that a reasonable jury could conclude that Captain Tate regarded Jordan as having a disability based on Captain Tate's deposition testimony and his comments to Jordan. *See* 42 U.S.C. § 12102(3)(A) (a plaintiff is "regarded as" having a disability if he can establish that he "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

[5] We note that Jordan did not request a reasonable accommodation from Union City, nor would a reasonable accommodation be available to him based solely on a "regarded as" theory of disability. *See* 42 U.S.C. § 12201(h).

plaintiff's supervisor, among other factors.  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1257-58 (11th Cir. 2007).

The essential functions of the police-officer position are not in dispute. These functions, which are derived from Union City's written description of the position and from Captain Tate's testimony, include the ability to exercise sound, independent judgment in emergency or stressful situations and to react quickly and calmly in emergencies.  The job description further states that officers may be exposed to dangerous and life-threatening situations and that they must be mentally and physically capable of using deadly force, if justified.

Viewing the evidence in the light most favorable to Jordan and resolving all factual disputes in his favor, we conclude that the district court properly granted summary judgment to Union City.[6]  Jordan's deposition testimony regarding his condition establishes that Jordan's condition affected his ability to process and manage stress.  In addition, Jordan testified that his condition could and did impact his breathing, blood pressure, heart rate, and adrenal fatigue.

---

[6] Our review of the district court's decision indicates that the court carefully relied on only those facts as to which no dispute existed, such as Jordan's deposition testimony regarding his condition.  But even had the court relied on disputed facts or a certain construction of the evidence, we are not bound by the district court's determination of the facts for summary-judgment purposes and may determine those facts ourselves.  *Feliciano*, 707 F.3d at 1252 n.5 ("[O]n *de novo* review of a summary judgment ruling, we may not only affirm on any ground supported by the record, but may also choose to disregard a district court's determination of the facts for summary judgment purposes and determine those facts ourselves.").

Jordan explained that his anxiety episodes were also unpredictable.  He testified that about once a month, he would experience a couple of episodes together and then none for a while.  The episodes were not necessarily triggered by events, but events could stimulate his anxiety.  As Jordan related, his anxiety episodes were unpreventable and largely uncontrollable.  Jordan testified that he had learned various techniques over the years to control the anxiety, such as various breathing techniques, pinching his thumbs, and reassuring himself that he was not dying.  However, he also stated that it was an "ongoing process" and that the coping techniques did not prevent episodes from occurring.  *See* Jordan Dep. at 47, 80 ("I think when the episode is going to come, it's going to come.").  Rather, the coping techniques kept the anxiety from getting worse.  *Id.* at 47-48 ("Don't get me wrong, I can't control the feeling.  I can't control the anxiety.  I can just keep it from getting worse.").  Moreover, coping with an anxiety episode affected his ability to concentrate.  Jordan had sought medical treatment because of an episode on four occasions since his first episode in 2007.

In light of this undisputed evidence, we conclude that district court properly found no genuine issue of material fact regarding Jordan's ability to react quickly and calmly in high-stress and potentially life-threatening situations while experiencing and trying to mitigate the effects of an anxiety episode.  "[B]eing prepared to respond to unexpected events is, in part, precisely what defines a police

10

officer or detective," *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1258 (11th Cir. 1997), and Jordan's testimony reflects the possibility that he was likely to have unpredictable and unpreventable anxiety episodes while on duty that would affect his ability to process and manage stress and impact his breathing, blood pressure, heart rate, and adrenal fatigue. And even aside from the physiological effects of his condition, coping with an anxiety episode so as to prevent it from getting worse necessarily would require Jordan to divert some of his focus away from his external circumstances, clearly affecting his ability to respond quickly and calmly in dangerous and potentially life-threatening situations. While the record contains evidence that Jordan was fully capable of performing the duties of his position much of the time, even an infrequent inability to perform the essential functions of the position is enough to render a plaintiff not a "qualified individual" under the ADA. *See id.* at 1257.

The events at Raymond Drive further support the district court's determination. Jordan experienced "high levels of anxiety," during which he "choked up," his respirations were shallow, his heart was racing, and his blood pressure was elevated. Although Jordan contends that he was able to respond to the shots-fired call and that his anxiety on that occasion did not rise to the level of an episode or attack, Jordan still exhibited symptoms sufficiently serious in degree

to give cause to another officer to believe that Jordan required immediate medical attention.

For these reasons, we conclude that the district court properly found that Jordan failed to show that he was a qualified individual under the ADA. Because Jordan must show that he is a qualified individual to proceed under the ADA, we do not address his remaining arguments, such as the legitimacy of Union City's reasons for his termination. Consequently, we affirm the grant of summary judgment in favor of Union City.

**AFFIRMED.**