[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14882
_____

D.C. Docket No. 0:14-cv-62793-BB

REGINALD CHATMAN,
111400591 Broward County Mail Jail
Inmate Mail/Parcels
Post Office Box 9356
Fort Lauderdale, FL 33310,

Plaintiff - Appellee,

versus

FT. LAUDERDALE POLICE DEPARTMENT, et al.,

Defendants,

DEPUTY WENGERT,
(ccn 13500) BSO Deputy;
individually and in their official capacities,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 6, 2016)

Before HULL, MARCUS, and ROGERS,[*] Circuit Judges.

HULL, Circuit Judge:

In this 42 U.S.C. § 1983 case, defendant Deputy Gerald Wengert appeals the district court's order denying his motion for summary judgment on the basis of qualified immunity. After review of the record and the parties' briefs, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

Plaintiff Reginald Chatman brought this § 1983 action against defendant Deputy Wengert, a canine officer with the Broward County Sheriff's Office ("BSO"), alleging that Deputy Wengert used excessive force in violation of Chatman's Fourth Amendment rights. Below, we discuss the summary judgment evidence and the procedural history.

## A.    First Arrest Attempt and Chatman's Flight

On November 9, 2014, BSO officers detained plaintiff Chatman on suspicion of petit theft. When BSO officers tried to handcuff Chatman, Chatman got up and ran. Chatman ran for a few blocks, caught "charley horses" in his legs, and fell into a bush. Chatman stayed and hid in the bush.

---

[*]Honorable John M. Rogers, United States Circuit Judge for the Sixth Circuit, sitting by designation.

**B.    Officers' Pursuit and Apprehension of Chatman**

After Chatman's flight, defendant Deputy Wengert received a request to help with the search for Chatman. Deputy Wengert, along with his canine partner Diesel, spent an hour or more searching for Chatman on foot.

According to Deputy Wengert, while he and Diesel searched near a building within the established perimeter, Deputy Wengert issued a standard BSO canine warning.[1] After this initial warning, Deputy Wengert avers that he gave "ample time for someone to surrender."

Sometime after Deputy Wengert gave the initial warning, canine Diesel alerted near a line of bushes, indicating that someone was hiding behind the bushes. After Diesel alerted, Deputy Wengert gave a second standard BSO canine warning. Deputy Wengert then issued a third canine warning as follows: "Broward Sheriff's Office. Anybody who is inside the bushes, you need to come out with your hands up, or you will be bit by my dog."

Having heard no response to the third warning, around 12:30 a.m., Deputy Wengert issued a "hold the air" radio call, which was a signal to other officers that canine Diesel had alerted and that Deputy Wengert needed everyone to be quiet.

---

[1]When BSO canine deputies give the standard canine warning, they shout the following: "Broward Sheriff's Office Canine. You are under arrest. Surrender or I will release my police dog and you will be bit."

3

Chatman's version of events differs materially from Deputy Wengert's account. Importantly at this summary judgment stage, Chatman averred that Deputy Wengert issued no canine warning at all before releasing Diesel to bite.

## C.    The Dog Bite

After issuing the third warning and hearing no response from anyone inside the bushes, Deputy Wengert released canine Diesel. Diesel located Chatman inside the bushes and bit Chatman on the left leg. Deputy Wengert and Chatman also disagree about what happened next.

By Deputy Wengert's account, Chatman began yelling as soon as canine Diesel bit his leg. Deputy Davis Acevedo, another BSO officer, heard the commotion and ran toward Deputy Wengert. Chatman began to emerge from the bushes with his hand on Diesel's face and snout. Deputy Acevedo grabbed Chatman by the leg and pulled Chatman out of the bushes. Deputy Wengert immediately removed Diesel from Chatman's leg while Deputy Acevedo handcuffed Chatman. Deputy Wengert avers that Diesel bit Chatman's leg for no longer than five or ten seconds.

Once again, Chatman's version of events is entirely different. According to Chatman, Diesel first bit his lower left leg and dragged him out of the bushes. Chatman initially tried to push Diesel off of him, but Diesel then bit Chatman on the left thigh. Chatman states that he surrendered immediately upon being bitten

4

by Diesel, yelling:  "I give up," "I swear I'll never run," "[p]lease get the dog," "I am not going to run," and "I surrender."  In response, Deputy Wengert told Chatman that he never should have run.

Throughout the dog bite episode, Chatman did not hear Deputy Wengert directing Diesel to release Chatman.  Rather, Chatman averred that Deputy Wengert allowed Diesel to continue biting his leg, despite Chatman's full surrender, for as long as fifteen or twenty minutes.

Once Deputy Wengert and Deputy Acevedo had Chatman in custody, Deputy Wengert requested that Tamarac Fire Rescue respond to the scene and treat Chatman's injuries.  Shortly after Chatman's apprehension, around 12:34 a.m., Deputy Popick and Deputy Navarro positively identified Chatman as the suspect who ran from them earlier in the night.  Throughout this episode, Deputy Wengert was not wearing a body camera.

**D.    Chatman's Medical Treatment**

After fire rescue workers checked Chatman's injuries at the scene of the arrest, Deputy Butler transported Chatman to a local hospital.  The medical report from Chatman's treatment indicates that Chatman suffered dog bites on his left hamstring and quadriceps.  The medical report also states that Chatman could walk and bear weight on his left leg and that Chatman was experiencing "mild" symptoms.

While Chatman was being treated, Deputy Wengert arrived at the hospital and took photographs of Chatman's injuries. The photographs show multiple puncture wounds and scratches on Chatman's left thigh and multiple scratches or bruises on Chatman's shoulder.

The treating physicians administered medication and bandaged Chatman's wounds. Chatman was cleared for discharge around 1:36 a.m.[2] Chatman states that a prison doctor later told him that he suffered nerve and muscle damage in his left leg. Chatman also averred that, because of the incident, he suffers from a lingering hip injury and has nightmares.

## E.    District Court Proceedings in Chatman's Civil Case

On July 23, 2015, Chatman filed the operative second amended complaint against Deputy Wengert. Chatman asserted two 42 U.S.C. § 1983 excessive force claims against Deputy Wengert but later dismissed one of those counts. On May 2, 2016, Deputy Wengert filed a motion for summary judgment on the basis of qualified immunity.[3]

---

[2]Chatman eventually pled guilty to felony battery with a prior conviction, resisting/obstructing without violence, and petit theft.

[3]In support of his motion for summary judgment, Deputy Wengert sought to introduce the expert report of Charlie Mesloh, Ph.D, who opined that, in light of the photographs of Chatman's injuries, Diesel could not have continued biting Chatman for as long as fifteen minutes. Chatman objected to the consideration of Mesloh's report because Deputy Wengert failed to timely disclose Mesloh as a witness. The district court ordered that Mesloh's report be excluded and stated that it would not consider the report in ruling on Deputy Wengert's motion for summary judgment.

6

In a June 30, 2016 order, the district court denied Deputy Wengert's motion for summary judgment. The district court did find that Deputy Wengert acted within his discretionary authority throughout Chatman's apprehension and arrest and that Deputy Wengert's initial use of force in releasing canine Diesel was not unreasonable or excessive. The district court ultimately determined, however, that because there was evidence in the record supporting the conclusion that Deputy Wengert violated a clearly-established constitutional right, Deputy Wengert was not entitled to summary judgment on the basis of qualified immunity.

This is Deputy Wengert's appeal. Chatman did not file a cross-appeal and otherwise does not argue that the initial use or release of Diesel constituted excessive force. Thus, this case is only about the parties' disputes regarding (1) at what point in time Chatman surrendered and (2) whether Deputy Wengert allowed Diesel to continue biting for fifteen to twenty minutes after Chatman's full surrender.

## II.  ANALYSIS

On appeal, Deputy Wengert does not argue that Chatman's right to be free from a prolonged dog bite <u>after surrender</u> was not clearly established under federal law. Rather, Deputy Wengert primarily contends that, given the photographs of Chatman's injuries, Chatman's testimony about the alleged twenty-minute duration of the dog bite should be disregarded as legally incredible under <u>Scott v. Harris</u>,

7

550 U.S. 372, 127 S. Ct. 1769 (2007).  Alternatively, Deputy Wengert contends

that Chatman's injuries were merely de minimis and thus show that Deputy

Wengert necessarily used only de minimis force, which is not actionable.[4]

First, we disagree with Deputy Wengert's contention that Chatman's

testimony about the length of the dog bite is legally incredible under the Supreme

Court's decision in Scott.  At issue in Scott was video evidence that depicted the

events in question and conclusively established the incredibility of the plaintiff's

version of events.  Scott, 550 U.S. at 378-81, 127 S. Ct. at 1775-76.  In Scott, the

Supreme Court held that on a motion for summary judgment, the court need not

accept the nonmoving party's version of events where the parties tell "different

stories" and the nonmoving party's story "is blatantly contradicted by the record,

so that no reasonable jury could believe it."  Scott, 550 U.S. at 380, 127 S. Ct. at

1776; see also Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir.

2013) (explaining that for evidence to be discounted at summary judgment, it must

be more than simply self-serving or unsubstantiated; it must be "blatantly

contradicted by the record, blatantly inconsistent, or incredible as a matter of law,

meaning that it relates to facts that could not have possibly been observed or events

that are contrary to the laws of nature").

---

[4]We review de novo the district court's denial of a motion for summary judgment on the basis of qualified immunity.  Carter v. Butts Cty., 821 F.3d 1310, 1318 (11th Cir. 2016).

Here, we cannot say that Chatman's testimony about the duration of the dog bite is "blatantly contradicted" by the medical and photographic evidence such that no reasonable jury could believe that testimony. Unlike the video evidence at issue in Scott, the medical and photographic evidence in this case does not conclusively establish how long the dog bite continued after Chatman's full surrender. Viewed in the light most favorable to plaintiff Chatman, the evidence shows that Chatman suffered at least four different punctures and bites on different areas of his upper leg, and there is no expert testimony suggesting otherwise. Instead, all of the evidence viewed in the light most favorable to Chatman creates a factual issue as to how long the dog bite continued and how long Deputy Wengert allowed canine Diesel to continue biting or holding Chatman's upper leg after Chatman surrendered. See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006) (holding that, on consideration of a motion for summary judgment, "courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party"). Chatman's testimony does not relate to "facts that could not have possibly been observed" or describe "events that are contrary to the laws of nature." See Feliciano, 707 F.3d at 1253.

Second, we reject Deputy Wengert's argument that the injuries Chatman suffered, and thus the force used, were de minimis. See Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]his Circuit has established the principle that the

9

application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."). Crediting Chatman's version of events, a twenty-minute dog attack after full surrender, which resulted in lasting injuries, cannot be dismissed as de minimis. See Edwards v. Shanley, 666 F.3d 1289, 1298 (11th Cir. 2012) (concluding that it was unreasonable for officers to allow a dog to attack a suspect for five to seven minutes after surrender); Priester v. City of Rivera Beach, 208 F.3d 919, 923-24, 927 (11th Cir. 2000) (concluding that it was unreasonable for police officers to allow a dog to attack and bite a suspect for two minutes where the suspect was compliant and did not resist); cf. Jones v. Fransen, __ F.3d __, __, No. 16-10715, 2017 WL 2198126, at *7 & n.5 (11th Cir. May 19, 2017) (concluding that police officers were entitled to qualified immunity in a dog bite case where the plaintiff did not allege (1) that he surrendered during the dog bite or (2) that police officers unnecessarily prolonged the dog attack).

## III.  CONCLUSION

Based on the foregoing, we affirm the district court's order denying Deputy Wengert's motion for summary judgment on the basis of qualified immunity.

**AFFIRMED.**

10

ROGERS, Circuit Judge, dissenting.

In my view, the photographic evidence blatantly contradicts Chatman's claim that Diesel viciously bit and tore at him for anywhere near fifteen to twenty minutes. I would therefore reverse the denial of qualified immunity pursuant to *Scott v. Harris*, 550 U.S. 372 (2007).