[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10872
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00083-HLM

ALFRED DAYS,

Plaintiff-Appellant,

versus

WARDEN SCOTT CRICKMAR, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 18, 2017)

Before TJOFLAT, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Alfred Days filed an action under 42 U.S.C. § 1983 against Defendant-Appellees Scott Crickmar and Alisa Hammock, the warden and deputy warden, respectively, at Hays State Prison (Hays), alleging that they violated his Eighth Amendment rights.[1]  While he was incarcerated at Hays, Days was beaten and sexually assaulted by a group of inmates.  Days asserts that the defendants were deliberately indifferent to the pleas for protective custody he made before the attack.  Days also contends that the defendants are not protected by qualified immunity.  The district court granted summary judgment in favor of Crickmar and Hammock.  Days now appeals.  After careful review, we affirm.

## I.[2]

Days was imprisoned at Hays State Prison, in the Northern District of Georgia.  His trouble began in October 2014, when he was assigned to a work detail outside the prison.  Soon after Days began his new job, inmates who were known gang members contacted Days.  They wanted him to bring contraband into the prison when he returned from his outside work.  When Days refused, the gang members threatened him.

---

[1] In his amended complaint, Days also sued Monica Hill, a doctor at the prison.  The allegations against Dr. Hill were previously dismissed and are not part of this appeal.

[2] We take the facts from the parties' undisputed statements of material facts.

Because of the threats, Days asked a prison official, Sergeant Swinford, for protective custody. Instead, Swinford put Days on "pending investigation" status while he looked into the allegations. During that time, Days repeated his requests for protective custody to various prison officials. He told Officer Dyer and Sergeant Stokes about the threats, and he wrote multiple letters to Warden Crickmar and Deputy Warden Hammock.

But Days never heard back from Crickmar or Hammock, and he was not placed in protective custody. Nevertheless, Days believes Crickmar and Hammock received his letters because after the investigation was complete, Hammock transferred his housing to Y dorm. All parties agree that Y dorm is the safest dorm at Hays.

Days was placed in Y dorm in early December 2014.[3] After Days arrived, he stopped his requests for protective custody. He felt safe in Y dorm, as inmates with histories of violence were not housed there. Indeed, Y dorm did not "have problems with fighting, etc." On top of that, the dorm housed older and respectful people. And the only gang members housed there were former gang members who needed to be housed away from the gangs. Y dorm was also offset from other buildings and was surrounded by a locked gate.

---

[3] The parties agreed, in their statements of undisputed facts, that Days was placed in Y dorm in early December 2015. Since the parties otherwise agreed that the relevant events took place in 2014, we believe this was a harmless typographical error.

3

Around the time Days moved to Y dorm, Days was transferred to work in the kitchen. Nobody threatened him while he worked there. Days admits he felt safe working in the kitchen.

Unfortunately, though, on December 19, 2014, weeks after the investigation ended, gang members physically and sexually assaulted Days in the kitchen bathroom.

Days filed this action soon afterwards. As relevant to this appeal, he alleged that Crickmar and Hammock violated his Eighth Amendment rights by failing to place him in protective custody when they knew that gang members had threatened him. Following discovery, Crickmar and Hammock moved for summary judgment, which the district court granted after finding that the defendants were entitled to qualified immunity. Days now appeals.

## II.

We review de novo a district court's grant of summary judgment. *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). In so doing, we apply the same legal standards that bound the district court and view all facts and reasonable inferences in the light most favorable to the non-moving party. *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007). We may affirm the district court's summary-judgment decision on any basis supported by the

4

record, even if the district court did not rely on that basis. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251-52 (citation omitted).

A district court may grant summary judgment if the moving party shows that no genuine dispute of material fact exists and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact occurs when the evidence could lead a reasonable factfinder to render a verdict for the non-moving party. *Melton*, 841 F.3d at 1219. Factual disputes that are irrelevant to the legal resolution of the case are not material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To aid in efficiency, the Northern District of Georgia has enacted local rules governing the protocol for prosecuting and opposing summary-judgment motions.[4] Under Local Rule 56.1(B)(2)(a)(2), N.D. Ga., the district court considers at summary judgment only those facts that are in the movant's statement of undisputed facts, or the non-movant's response, and that are supported by a citation to supporting evidence in the record. *See id*. The court must review the citations to the record to satisfy itself that the motion is supported by evidence. *See Reese*, 527 F.3d at 1269 (citation omitted).

---

[4] Title 28, United States Code, Section 2071(a) authorizes courts to "prescribe rules for the conduct of their business." So long as such rules are "consistent with Acts of Congress and rules of practice and procedure prescribed under" 28 U.S.C. § 2072, they "are effective unless modified or abrogated by the judicial council of the relevant circuit." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (citations and internal quotation marks omitted).

### III.

When an inmate is at a substantial risk of serious harm, a prison official's deliberate indifference to that risk violates the Eighth Amendment. *Farmer*, 511 U.S. at 828. So prison officials have a duty to protect inmates from violence. *Rodriguez v. Sec'y for Dept. of Corr.*, 508 F.3d 611, 616-17 (11th Cir. 2007). But this duty is not absolute. *See Farmer*, 511 U.S. at 834.

To hold a prison official liable for deliberate indifference, an inmate-plaintiff must meet three requirements. *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016). First, the plaintiff must show that he faced a substantial risk of serious harm. *Id.* Second, the plaintiff must establish that the defendants subjectively knew of the risk, but they disregarded it by failing to respond in an objectively reasonable manner. *Id.* And third, the plaintiff must show a causal connection between the defendants' conduct and the harms to the plaintiff. *Id.*

Here, at a minimum, Days did not satisfy the second prong—that is, he did not show that the defendants failed to respond in an objectively reasonable manner to a substantial risk of harm that they knew of. True, the record establishes that Days reported the gang threats to prison officials, and they did not put him into protective custody.

6

But according to the undisputed factual record, which is supported by Days's own admissions at his deposition and in response to the defendants' statement of material facts, the prison officials (1) opened an investigation into Days's allegations; (2) moved Days to Y dorm, where Days himself felt safe; and (3) transferred Days to kitchen duty, where Days also felt safe. Certainly, if Days himself felt like these were safe places, it was not unreasonable for the defendants to share that view, particularly in light of the characteristics of the population housed at Y dorm and the fact that Days had not been further threatened after his move. Nor did Days submit any evidence to suggest that the defendants had any reason to believe that Days remained in any danger after these changes. Finally, Days also admitted that following these changes, he did not again request protective custody. For these reasons, Days cannot show that the defendants failed to respond in an objectively reasonable manner to a substantial risk of harm they knew existed.

Nor, as Days asserts, does the record reflect that it contains a material issue of fact concerning these matters. Days takes issue first with the defendants' statement in their statement of material facts, that it is unlikely that someone could have gained access to him and harmed him in Y dorm. But in light of the rest of the facts about Y dorm to which Days stipulated, this allegation is immaterial to the issue of whether the defendants objectively reasonably believed that Days would

7

be safe in Y dorm. As we have noted, Days admitted that only inmates without histories of fighting or stabbing were housed in Y dorm; that respectful people lived there; that Y dorm didn't "have problems with fighting, etc."; that he felt safe there; that it was offset from other buildings; and that it was surrounded by a locked gate. Against a background of no evidence suggesting that Y dorm was unsafe, these facts, in and of themselves, establish the reasonableness of the defendants' response to Days's reports of threats.

Days's other contention that a material fact exists fares no better. Days denies that he stopped asking for protective custody after he began working in the kitchen. But the record tells a different story. In their statement of undisputed material facts, Crickmar and Hammock asserted that Days stopped asking for protective custody after he switched to the kitchen. Days made the following concessions in his response to that statement:

> 26. After being placed in the Y building in early December [2014], Days never asked for protective custody again. ADMITTED.
>
> . . .
>
> 28. Shortly after being housed in the Y building, Days was assigned to work in the kitchen serving breakfast at HSP. ADMITTED.

Because Days worked in the kitchen after he moved to Y dorm, his admission that he never again asked for protective custody necessarily includes during the entirety of the time he worked in the kitchen. And beyond that, the evidence Days cites to

8

us in his denial does not directly refute Crickmar and Hammock's assertion. Days cites his own deposition, but he cites requests for protective custody that he made while he was pending investigation, not afterwards. On this record, we are constrained to find that Days stopped asking for protective custody after he began working in the kitchen.

## IV.

As a result, on this record, Days did not state a viable claim under § 1983.[5] We therefore affirm the district court's entry of summary judgment.

**AFFIRMED.**

---

[5] For this reason, we need not conduct a qualified-immunity analysis.