[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10378
_____

D.C. Docket No. 3:09-cv-00092-TCB

AMBER NICOLE WRIGHT,

Plaintiff - Appellant,

versus

FAROUK SYSTEMS, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 29, 2012)

Before DUBINA, Chief Judge, CARNES and GILMAN,[*] Circuit Judges.

_____

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

CARNES, Circuit Judge:

Bob Dylan's recognition that "[b]ehind every beautiful thing there's been some kind of pain"[1] might seem painfully ironic to Amber Wright. Her quest for what she deemed to be more beautiful hair allegedly led not just to pain but also to emotional "scars that the sun didn't heal,"[2] all of which led to this lawsuit. Wright filed this products liability action under Georgia law alleging that a hair bleaching product manufactured by Farouk Systems burned her scalp, causing her to suffer physical, mental, and emotional pain. She claims that the product—colorfully named "Blondest Blonde"—is defective because it contains isolated areas of high reactivity, called "hot spots," that can lead to burning of the scalp. She also claims that Farouk failed to adequately warn users of the product of the risk that burns can result if the product touches the scalp. The district court granted Farouk's motion for summary judgment on all of Wright's claims, and this is her appeal.

I.

On February 11, 2005, Amber Wright visited Vicki O's hair salon in Carrollton, Georgia where Monica Shenker, a licensed master cosmetologist, colored her hair. Wright—who was thirteen years old at the time—wanted her hair

---

[1] Bob Dylan, "Not Dark Yet," on Time Out of Mind (Sony Records 1997).

[2] Id.

2

"highlighted," which is accomplished by bleaching sections of the hair.  Shenker selected two of Farouk's products to lighten Wright's hair:  CHI Blondest Blonde ionic powder lightener and CHI Volume 40 Color Generator.[3]

Shenker testified at her deposition that before she bleached Wright's hair she had read the directions for both Blondest Blonde and Volume 40 Color Generator and was familiar with how to prepare and apply those products.  Before using them, Shenker inspected Wright's scalp and did not see any cuts, abrasions, wounds, or other abnormal conditions.  She vigorously shook the Blondest Blonde bottle, as its instructions direct, and then mixed it with the Color Generator in a plastic bowl until the mixture had a medium consistency.  Shenker stirred the two products thoroughly to ensure a creamy, uniform mixture with no lumps or clumps. She did not notice anything unusual during the mixing process and did not feel any heat rising from the mixing bowl.

Shenker testified that she then put the products on Wright's hair using the foiling method, which involves applying the bleaching mixture to sections of the hair using a brush and then wrapping the hair in aluminum foil to keep the product

---

[3] The two products involved in this case must be mixed together in order for them to work.  The first product, Blondest Blonde, is a hair bleaching powder.  The second product, Color Generator, is a liquid hydrogen peroxide solution. Mixing the two products creates a chemical reaction, and when the mixture is applied to the hair it penetrates the hair shaft and destroys the melanin pigments that give hair its natural color.  Blondest Blonde is the only one of the two products at issue in this appeal.

off the scalp. When Shenker did that, she did not feel any heat coming from the foils.

Shenker also testified that after applying the mixture and foils, she placed Wright under a hair dryer on the medium heat setting. She was supposed to remain under it for ten to twelve minutes, but after about four minutes, Wright removed her head from the dryer and told Shenker that her head was burning. Shenker and another stylist inspected Wright's scalp and neither of them observed any evidence of a burn. Shenker saw that Wright's scalp was pink, but that is normal after being under a warm dryer. She noticed that the foils were warm from being under the dryer, as was to be expected, but they were not hot to the touch. After Shenker removed the foils, she washed and rinsed Wright's hair.

On February 20, 2005, nine days after Wright had her hair colored, she went to the emergency room complaining of a burn to her scalp. She was diagnosed with a second and third degree burn to her scalp and was referred to the Grady Memorial Hospital Burn Center where Dr. Walter Ingram diagnosed her with a full thickness burn to the scalp.[4] Wright later underwent a surgical procedure to place a skin graft over the burn.

---

[4] Dr. Ingram would later serve as Wright's medical expert. He testified in his deposition that the burn was at least two weeks old at the time he examined her scalp. He explained that chemical burns like Wright's develop over time, making it difficult to determine the exact date

4

Wright brought this lawsuit against Farouk Systems asserting claims for:  (1) negligent design and manufacture, (2) negligent failure to warn, (3) strict liability, and (4) strict liability failure to warn.  She retained an expert, chemist Mort Westman, who was willing to testify that Blondest Blonde contains isolated areas of inordinately high reactivity, which he called "hot spots."  According to Westman, those hot spots can generate unintentional heat through a chemical reaction during the mixing process, which could have caused Wright's burn.

Farouk filed a motion for summary judgment along with a <u>Daubert</u> motion to prevent Westman from testifying as an expert.  In opposing the motion for summary judgment, Wright argued that in addition to Westman's testimony there was a substantial amount of other evidence in the record to support her claims.  She pointed to an affidavit from a salon owner who attested that Farouk Shami, the chairman of Farouk Systems, had told her that the Blondest Blonde formula would often separate, causing an "untoward or accelerated" chemical reaction to occur.  Wright also submitted the complaints from two other lawsuits that had been filed by people who claimed that they had been burned by Blondest Blonde before Wright's injury.  In addition, she submitted deposition testimony from a former

---

she had suffered the burn.  In his opinion, she could have been burned by Farouk's chemicals during her February 11, 2005 salon visit.

5

employee of Farouk about two other incidents where the product allegedly had overheated, once at a sales meeting and once at a hair show.

The district court granted Farouk's Daubert motion, excluding Westman's testimony expressing his opinion that Blondest Blonde was defective because it had hot spots. Wright does not contest that ruling.

The district court then granted Farouk's motion for summary judgment on all of Wright's claims. The court found that Wright had abandoned her negligent design and manufacture claims. As to her strict liability claims, it concluded that she had "not presented competent evidence showing that there is a genuine issue of material fact as to whether Blondest Blonde was defective because it contained hot spots." The court reasoned that after Westman's testimony was excluded, the remainder of Wright's evidence was inadmissible. The court ruled that the statements Farouk Shami had allegedly made to a salon owner were inadmissible hearsay, that Wright could not rely on the pleadings from other cases to defeat summary judgment, and that the other incidents where Blondest Blonde had allegedly overheated were inadmissible because they were not substantially similar

6

to the alleged incident in this case.  The court also entered summary judgment for

Farouk on Wright's failure to warn claims.[5]

## II.

Wright contends that the district court erred in refusing to consider some of

her evidence when ruling on Farouk's motion for summary judgment.  We review

a district court's evidentiary rulings at the summary judgment stage only for abuse

of discretion.  City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 556 (11th

Cir. 1998).

In opposing Farouk's motion for summary judgment, Wright submitted the

affidavit of Rosemary Weiner, a salon owner, who recounted a conversation she

had in 2006 with Farouk Shami, the chairman of Farouk Systems.  According to

Weiner:

> Shami . . . reported that although the product is homogeneous at the
> time of packaging, it is highly likely that over time, and transport to
> the end user, the powder will separate and the potassium persulfate,
> which is a finer and smaller crystal, will settle to the bottom of the
> container. . . . Shami further added that one cannot guarantee that
> shaking the container or turning it upside down will adequately re-
> homogenize the formulation, and that this situation will create a
> scenario where it is possible for an untoward or accelerated chemical

---

[5] Wright contends that the district court erred in granting Farouk's motion for summary
judgment on the failure to warn claims.  The district court's discussion of the failure to warn
claims is thorough and well-reasoned, and we affirm the district court's judgment on those
claims for the reasons stated in the court's order.

7

reaction to occur.  He further stated that because of this finding,
Farouk Systems was in the process of re-formulating the product.

Wright argues that the district court abused its discretion when it summarily ruled that she "has not shown that Shami's statements to [Weiner], as reported by [Weiner], are admissible despite being hearsay."

An affidavit used to support or oppose a motion for summary judgment must set out facts that would be admissible in evidence at trial for some purpose.  Fed. R. Civ. P. 56(c)(4); see also Macuba v. Deboer, 193 F.3d 1316, 1322–23 (11th Cir. 1999).[6]  Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement, Fed. R. Evid. 801(c), and is generally not admissible except as provided in the Rules of Evidence or a federal statute, Fed. R. Evid. 802.  A statement "made by [a] party's agent or employee on a matter within the scope of that relationship and while it existed," however, is an admission by a party opponent and is not considered to be hearsay.  Fed. R. Evid. 801(d)(2).

As the chairman of Farouk Systems when he allegedly made the statements to Weiner, Farouk Shami obviously was an agent or employee of the company, so the only issue is whether those statements were made about "a matter within the

---

[6] "Under [our] controlling precedent regarding diversity jurisdiction cases, the admissibility of evidence is a procedural issue, and therefore is governed by the Federal Rules of Evidence."  Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1396 (11th Cir. 1997).

8

scope of that relationship"—his relationship with the company. Shami testified in his deposition that he is the head of research and development at Farouk, and when asked if he stayed "involved in or aware of all aspects of the development and marketing of" Farouk's products, he answered: "For sure." Shami also testified that he was personally involved in the development of the Blondest Blonde formula. Based on his own deposition testimony, Shami's statements to Weiner about problems with the Blondest Blonde formula were clearly within the scope of his employment. See City of Tuscaloosa, 158 F.3d at 557–58 (holding that statements made by the chairman of a chemical company admitting to bid rigging were admissible as admissions of a party opponent when the record showed that the chairman was responsible for setting chlorine prices during the period of the alleged price fixing conspiracy). It follows that those statements are non-hearsay admissions of a party opponent. It was an abuse of discretion to exclude them from consideration on hearsay grounds. See Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1351 (11th Cir. 2008) ("An error of law is per se [an] abuse of discretion.").

Farouk, however, contends that even if Shami's statements to Weiner are not hearsay, the district court still should not have considered them because Wright failed to timely disclose Weiner as a witness as required by Fed. R. Civ. P. 26(a)(1)(A)(i), and that Wright's failure was not substantially justified or harmless.

9

Although Farouk raised that argument as an alternative ground for excluding the statements, the district court did not reach it. [7]

On remand, the district court should decide whether Weiner's affidavit should be excluded because Wright failed to timely disclose Weiner as a witness as required by Fed. R. Civ. P. 26(a)(1)(A)(i).  In exercising its discretion on that issue, the district court should make findings of fact and explain its ruling, which will enable us to review the ruling for an abuse of discretion if it is appealed.

Even if the district court concludes that Weiner's affidavit should be excluded under Rule 26, the court should also alternatively rule on Farouk's motion for summary judgment as though that affidavit were not excluded.  That will enable us to decide the case in one appeal, if there is an appeal, and will avoid the risk that another remand might be required. [8]

---

[7] Farouk also argues that Shami's statements should be excluded under Federal Rules of Evidence 403, 701, and 702.  Because Farouk failed to make those arguments in the district court, we will not consider them on appeal.  See Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994) ("[W]e have repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.") (quotation marks omitted).

[8] Wright also contends that the district court abused its discretion by not considering the complaints she proffered from other lawsuits.   That contention is without merit because pleadings are only allegations, and allegations are not evidence of the truth of what is alleged.  Wright, as the nonmovant, was required to go beyond the pleadings in her own case and present competent evidence in the form of affidavits, depositions, admissions, and the like to show a genuine issue for trial.  Celotex Corp. v. Cattrett, 477 U.S. 317, 324 (1986).  Just as Wright cannot rely on her own pleadings as evidence to defeat summary judgment, she cannot rely on the pleadings filed by other plaintiffs in other cases.

10

## AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

Wright also contends that the district court abused its discretion in ignoring evidence of two other overheating incidents described in the deposition of a former employee of Farouk. The court determined that Wright had failed to show that those other incidents were substantially similar to her case, and our review of the record convinces us that the ruling was not an abuse of discretion. See Hessen ex rel. Allstate Ins. Co. v. Jaguar Cars, Inc., 915 F.2d 641, 649 (11th Cir. 1990) (noting that in a products liability case, evidence of earlier occurrences is "only admissible if conditions substantially similar to the occurrence caused the prior accidents, and the prior incidents were not too remote in time").

11