[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16524
Non-Argument Calendar

_____

D.C. Docket No. 3:14-cv-00786-MMH-PDB


FEDERAL TRADE COMMISSION,

Plaintiff -
Counter Defendant -
Appellee,


versus


LANIER LAW, LLC,
a Florida limited liability company,
d.b.a. Redstone Law Group,
d.b.a. The Law Offices Of Michael W. Lanier,
LIBERTY & TRUST LAW GROUP OF FLORIDA, LLC,
a Florida limited liability company,

Defendants -
Counter Claimants,


MICHAEL W. LANIER,
individually and as an owner, officer,
manager, and/or representative of the
above-mentioned entities,

Defendant -
Counter Claimant -
Appellant,

FORTRESS LAW GROUP, LLC,
a Florida limited liability company,
et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 2, 2017)

Before TJOFLAT, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

This case requires us to consider whether the district court properly granted summary judgment to the Federal Trade Commission (FTC) on its claims that defendant Michael Lanier violated several federal statutes and regulations in connection with the sale of mortgage assistance relief services. Lanier argues that the district court should not have granted summary judgment for several reasons, including that the district court improperly admitted evidence against him, overlooked disputes of material fact, and made factual findings in the FTC's favor. We conclude that none of these arguments has merit and affirm the district court.

2

## I.    BACKGROUND

### A.    Factual Background

Through Lanier Law, LLC, his law firm, Michael Lanier, an attorney based in Jacksonville, Florida, offered mortgage assistance relief services to people in danger of losing their homes to foreclosure.[1]  Lanier and his affiliates promised homeowners that in exchange for an upfront fee, he would negotiate more affordable monthly mortgage payments, lower interest rates, and reduced principal balances on their behalf.

Lanier Law shared office space with Rogelio Robles and Edward Rennick, two of Lanier's co-defendants, who operated several other entities including Pinnacle Legal Services, Fortress Legal Services, and the Department of Loss Mitigation and Forensics ("DOLMF") (collectively, the "staffing agencies"). These entities provided staffing, referrals, and other services to Lanier Law.

In 2012, the Florida Bar filed a complaint against Lanier related to his foreclosure relief services.  Lanier eventually entered a conditional guilty plea, admitting that he had improperly solicited clients and failed to supervise non-lawyers, and he was suspended briefly from the practice of law.

---

[1] Lanier Law, LLC also operated under other names in Florida including Fortress Law Group, LLC and Liberty & Trust Law Group of Florida, LLC.  For ease of reference, we use "Lanier Law" to refer collectively to these entities.  We use "Lanier Law, LLC" when referring to the one entity.

Prior to Lanier's suspension, he became involved with three newly created entities in the District of Columbia:  Fortress Law Group, LLP; Redstone Law Group, LLP; and Surety Law Group, LLP (collectively, the "D.C. firms"), which, like Lanier Law, provided consumers with mortgage assistance services.[2]  These entities purported to be law firms based in the District of Columbia, but they were in fact "virtual office[s]" for Lanier's operations in Florida.  Rennick Dep. at 33 (Doc. 271).[3]  Although Lanier "transferred" his foreclosure defense cases to the D.C. firms, any mail sent to D.C. was forwarded immediately to Jacksonville, Florida, where Lanier Law operated.  Lanier Dep. at 37 (Doc. 269).  The Pinnacle and DOLMF employees who had previously worked with Lanier Law clients continued to work on behalf of the D.C. firms.  And to collect payments, the D.C. firms used the merchant processing portal that Lanier had used for Lanier Law.

So that Lanier Law and the D.C. firms could attract consumers nationwide, they associated with "of counsel" attorneys across the country.  The "of counsel" attorneys were paid a monthly retainer of approximately $300 per month; the work they performed was generally limited to reviewing retainer agreements for client contact information and to make sure the agreements were signed and dated.

---

[2] Lanier denies his involvement in establishing the D.C. firms, but states that he "assisted in the transition to those D.C. firms."  Lanier Dep. at 69 (Doc. 269).

[3] Citations to "Doc." refer to docket entries in the district court record in this case.

Together, Lanier Law and the D.C. firms operated a volume business recruiting consumers to purchase mortgage assistance relief services ("MARS"). The staffing agencies solicited consumers through the internet, letters, and flyers offering mortgage assistance. The advertisements promoted the "of counsel" network, noting that the law firm "has working arrangements with experienced and competent lawyers and law firms in many other states." 2013 Flyer at 56 (Doc. 246-5). One flyer, entitled the "Economic Stimulus Mortgage Notification" (the "Flyer"), which appeared to be a government document, informed consumers that their property had been "selected for a special program by the Government Insured Institutions," that would "bring your house payments current for less than you owe or your principal balance down." 2012 Flyer at 66 (Doc. 246-1). Other flyers identified the sender as DOLMF, which was owned by Robles. Lanier denies any part in "drafting, sending, approving, or us[ing]" the Flyer. Lanier Aff. at 9 (Doc. 253).

Consumers who responded to the advertisements were referred to Lanier Law or the D.C. firms. During the enrollment process, case managers told customers that the firm would obtain loan modifications with significantly lower payments and interest rates. The representatives assured clients that the firms had extremely high success rates in lowering payments—over 90 percent. Once new clients enrolled, Lanier Law and the D.C. firms sent them similar paperwork. The

5

consumers were required to pay advance fees of more than $2,000, sometimes payable in installments.  Some consumers were told to stop their mortgage payments and to pay Lanier Law or the D.C. firms instead.

Once the consumers began making payments, Lanier Law and the D.C. firms stopped communicating with them or transferred them to various case managers who assured them that work was being done on their loan modifications. Some consumers learned from their lenders that Lanier Law and the D.C. firms had never attempted to contact the lenders.  Most of the consumers complained that the firms failed to obtain any modifications on their behalf.  Others reported that although some modifications were obtained, they were not as promised and sometimes required higher payments than consumers had paid previously.

## B.    Procedural Background

### 1.    District Court Proceedings

The FTC filed a complaint against Lanier, Robles, Rennick, Lanier Law, and the D.C. firms, alleging that they had marketed and sold mortgage assistance relief services in violation of Section 5(a) of the Federal Trade Commission Act (FTCA),[4] the Mortgage Assistance Relief Services Rule (Regulation O) (MARS

---

[4] 15 U.S.C. § 45(a).

6

Rule),[5] and the Telemarketing Sales Rule (TSR).[6]  Specifically, the FTC alleged

the defendants had misrepresented their ability to obtain mortgage modifications,

charged consumers advance fees, failed to include required disclosures in their

communications, initiated phone calls in violation of the TSR, and failed to pay the

required fees to access the National Do-Not-Call list.

The FTC moved for summary judgment, and the district court granted the

motion.  The court concluded that the defendants violated Section 5 of the FTCA

by making material misrepresentations that caused substantial consumer harm and

by violating the MARS Rule and the TSR.  The district court determined that the

defendants violated the MARS Rule when they demanded and received fees for

their services prior to performing any work; misrepresented the likelihood of

obtaining a loan modification, especially with respect to reductions in monthly

payments, interest rates, and principal balances; and failed to make proper

disclosures.  Finally, the court concluded that Lanier was individually liable for the

acts of the corporate entities.[7]  The district court determined that his authority and

---

[5] 16 C.F.R. Part 322, recodified as the MARS Rule, 12 C.F.R. Part 1015.  Among other things, this rule prohibits sellers and providers of MARS from engaging in deceptive conduct and collecting advance fees for MARS work.  But attorneys who provide MARS "as part of the practice of law" may be exempt from the MARS Rule under certain circumstances.  12 C.F.R. § 1015.7.

[6] 16 C.F.R. Part 310.

[7] We note that the entities referred to by the parties and the district court as the "corporate" defendants are actually limited liability companies and limited liability partnerships, but it makes no difference to the outcome of this appeal.

control over the defendants and his knowledge of their practices placed him

"squarely at the center of this deceptive enterprise," making him individually liable

for the misconduct.  Order at 72-74 (Doc. 281).

On August 12, 2016, the district court entered a permanent injunction

against Lanier and his co-defendants.  The district court also entered judgment in

favor of the FTC in the amount of $13,586,713.  This is Lanier's appeal.[8]

## 2.    Appellate Proceedings

On October 10, 2016, Lanier filed a timely notice of appeal, in which he

referred to himself and the entities comprising Lanier Law as the "Lanier

Defendants":

> Defendant, Lanier Law, et al., hereinafter the "Lanier Defendants,"
> hereby appeals to the United States Court of Appeals for the Eleventh
> Circuit from the final judgment of the District Court dated August 12,
> 2016 and the Order of July 7, 2016 . . . .

Notice of Appeal (Doc. 303).  After the appeal was docketed, Lanier attempted to

enter an appearance on behalf of himself and Lanier Law in this Court, but the

Clerk returned the form unfiled because Lanier's application for admission in the

Eleventh Circuit bar had been denied.

---

[8] Following the FTC's settlement with Rennick and his corporate entities and our
dismissal of Robles's and the other defendants' appeals for want of prosecution, Lanier is the
only remaining defendant.

In response, on November 29, 2016, Lanier filed an amended notice of appeal in the district court:

> Defendant, Michael W. Lanier, Esq, individually, . . . hereby appeals to the United States Court of Appeals for the Eleventh Circuit . . . Lanier is admitted to practice before the Federal District Court, but was denied admission to practice in the 11th Circuit Court of Appeals as well as *pro hac vice* admission there.

Am. Notice of Appeal (Doc. 309). In a letter to the Court, Lanier explained that his amended appeal was intended to "reflect" that he would "represent[] [himself], *pro se*, and that none of the corporate (Lanier) defendants [would] join [him] in the appeal." Lanier Law was then dismissed from the appeal.

While the appeal was pending, this Court asked the parties to address whether Lanier's November 29, 2016, amended notice of appeal was timely to appeal from the district court's final judgment on behalf of Lanier personally. Following briefing by both parties, the Court determined that it was not, but reserved the question of whether Lanier's October 10, 2016 notice on behalf of "Lanier Law, et al." perfected his appeal in his personal capacity.

## II.    STANDARDS OF REVIEW

Two standards of review govern this case. First, we review the "district court's evidentiary rulings at the summary judgment stage only for abuse of discretion." *Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 910 (11th Cir. 2012). Under this standard, "we must affirm unless we find that the district court has

9

made a clear error of judgment, or has applied the wrong legal standard." *Knight ex rel. Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 808 (11th Cir. 2017) (internal quotation marks omitted).

Second, we review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). If the non-movant's evidence is "not significantly probative," summary judgment is appropriate. *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). All facts and reasonable inferences must be made in favor of the non-moving party. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## III.    DISCUSSION

**A.    This Court Has Appellate Jurisdiction over Lanier's Appeal.**

We must first determine whether we have appellate jurisdiction over this case.  After asking the parties to address this issue, we determined that Lanier's November 29, 2016 notice of appeal was untimely to appeal from the district court's final judgment on August 12, 2016.[9]  We reserved the question of whether Lanier's original notice, filed on October 10, 2016 on behalf of "Lanier Law, et al.," perfected his appeal in his personal capacity.  We now decide that it did.

We use a two-part test to determine whether a filing may be considered a notice of appeal.  *Rinaldo v. Corbett*, 256 F.3d 1276, 1278-79 (11th Cir. 2001). First, we consider whether the document effectively satisfies Federal Rule of Appellate Procedure 3(c)'s three-part requirement.  *Id*.  Second, we ask whether the document made it objectively clear the litigant intended to appeal.  *Id*.

The first inquiry considers whether "the litigant's action is the functional equivalent of what . . . [R]ule [3] requires."  *Id.* (quoting *Smith v. Barry*, 502 U.S.

---

[9] Federal Rule of Appellate Procedure 4(a)(1)(B)(ii) gives the parties 60 days from the entry of judgment to file a notice of appeal if one of the parties is "a United States agency." Additionally, "[i]f one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."  Fed. R. App. P. 4(a)(3).

Here, Robles, one of Lanier's co-defendants, filed a notice of appeal on October 11, 2016, thus giving Lanier 14 days from that day to file his notice of appeal.  Lanier's amended notice clarifying that he intended to appeal as an individual, which was filed on November 29, 2016, was therefore untimely.

244, 248 (1992) (alterations in original)).  Under Rule 3, a notice must (1) "specify the party or parties taking the appeal," (2) "designate the judgment, order or part thereof being appealed," and (3) "name the court to which the appeal is taken." Fed. R. App. P. 3(c)(1).  These requirements are to be "liberally construe[d]." *Rinaldo*, 256 F.3d at 1278 (alteration in original) (quoting *Smith*, 502 U.S. at 247-48).  Indeed, the rule specifically states that "[a]n appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice."  Fed. R. App. P. 3(c)(4).

The second inquiry asks whether the filing indicated the litigant's intent to appeal.  This intent component focuses on whether the document "provides sufficient notice to other parties and the courts," "not [on] the litigant's motivation in filing it."  *Smith*, 502 U.S. at 248.  We have held, for example, that a motion for extension of time to file a notice of appeal should be construed as a notice of appeal.  *Rinaldo*, 256 F.3d at 1279-80.

Here, the two-step framework leads us to conclude that Lanier perfected his appeal in his individual capacity.  First, Lanier's October 10 notice of appeal effectively complied with Rule 3(c)(1)'s  requirements.  With respect to the rule's first requirement, that the appellant specify the parties taking appeal, Lanier referred to "Lanier Law, et al.," and also referenced the "Lanier Defendants," which he had used to include himself throughout the litigation.  Even the district

12

court had used the "Lanier Defendants" to mean Lanier himself.[10]  Thus, Lanier's use of that phrase to include himself was sufficiently clear such that he functionally complied with the rule's requirement.  Lanier also complied with the rule's second and third prongs, which require the appellant to note the order from which he appeals and the court to which he appeals.

Turning to the second prong of the test, Lanier's October 10 notice demonstrated his intent to appeal, providing adequate notice to the opposing party and the court.  In the notice, Lanier stated that "[t]he several law firms included as appellants are defendant law firms under which Michael W. Lanier, Esq. practiced as a sole practitioner and was their sole principal."  Notice of Appeal (Doc. 303).  Additionally, Lanier signed the notice in his own name, followed by "*pro se*," suggesting that he intended to represent himself, along with the law firms with which he was associated.  *Id.*  Finally, even if there were any doubt about *who* intended to appeal, there was no doubt that there was an intent to appeal on behalf of *some* of the defendants, many of whom were closely related to (if not entirely indistinct from) Lanier himself.  Thus, although Lanier failed to list himself

---

[10] In its July 7, 2016 order, for example, the district court noted that "it appear[ed] Lanier intended to respond on behalf of himself individually, as well as the entities he owns, specifically, Defendants Lanier Law, LLC d/b/a Redstone Law Group and as the Law Offices of Michael W. Lanier, Fortress Law Group, LLC, and Liberty & Trust Law Group of Florida, LLC (*collectively, with Lanier, the Lanier Defendants*)."  Order at 3 n.3 (emphasis added) (Doc. 281).

13

individually, the purpose of the rule, which is to inform the parties and the court of a litigant's intent to appeal, was satisfied here.

Accordingly, we hold that Lanier's October 10, 2016 notice of appeal on behalf of the "Lanier Defendants" was sufficient to perfect his individual appeal.

**B.      The District Court Properly Granted Summary Judgment to the FTC.**

Turning to the merits of this case, Lanier argues that the district court erred in granting summary judgment to the FTC.  He contends that the district court should have denied the FTC's summary judgment motion for several reasons. First, he argues that the district court should have excluded the FTC's declarations because they contained unreliable hearsay and were untrustworthy.  Without these declarations, he contends, the FTC failed to show that it was entitled to judgment as a matter of law.  Second, he asserts that the FTC failed to come forward with evidence of a common enterprise among Lanier and the other defendants.  Third, he argues the district court incorrectly concluded that he "used" the economic stimulus flyer, overlooking a genuine dispute about this fact.  We address each argument in turn.

**1.  The District Court Properly Considered the FTC's Declarations.**

Lanier first argues that the district court improperly relied on the FTC's declarations in granting summary judgment.  Lanier contends that the declarations

14

are hearsay and cannot be introduced in an admissible form of evidence at trial, and thus the district court should not have considered them. We disagree.

Federal Rule of Civil Procedure 56(c) describes the types of evidence on which either party may rely at the summary judgment stage:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .

The rule allows the opposing party to challenge such materials by arguing they "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c).

As we have interpreted Rule 56, "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012) (internal quotation marks omitted). However, a district court may consider hearsay in deciding a summary judgment motion "if the statement could be reduced to admissible evidence at trial." *Id.* at 1293-94 (internal quotation marks omitted). Hearsay statements in an affidavit, for example, may be made admissible by calling the affiant to testify at trial. *Id.* at 1294.

Lanier contends that the declarations offered by the FTC are inadmissible at trial because they fail to fit within one of the hearsay exceptions. He argues that

15

even if the declarants testified at trial, the declarations themselves would remain inadmissible, and thus those statements should not be considered at the summary judgment stage.  But the appropriate question is not whether the declarations *themselves* would ever be admissible—they may not be.  Instead, the question is whether the evidence contained *within* those declarations could be presented in an admissible form at trial.  Lanier fails to address whether, if the affiants repeated their statements in court, that testimony would be admissible.  Lanier therefore fails to raise a proper challenge to the declarations offered by the FTC and relied upon by the district court.

Thus, we hold that the district court did not abuse its discretion in relying on such evidence in deciding the summary judgment motion.

## 2.  The District Court Properly Considered the Declarations from Consumers and Attorneys in the "Of Counsel" Network.

Lanier next argues that the district court improperly relied on declarations from consumers and attorneys who had "of counsel" relationships with Lanier Law or the D.C. firms because their testimony was unreliable.  According to Lanier, these declarations should have been discredited given the FTC attorneys' involvement in preparing those documents.  With respect to the consumer declarations, Lanier argues that statements by "consumers looking for a payday" are inherently untrustworthy and thus "should be disregarded."  Appellant's Br. at

16

32. Similarly, Lanier contends the district court wrongly assumed that the "of counsel" declarations were true, despite "untruthful provisions appearing on their face." *Id*. at 34-35.[11]

But even assuming that Lanier's concerns about the consumer and attorney declarations are warranted, he has not established a genuine issue of material fact. To defeat summary judgment, Lanier must point to "specific facts" such that "a reasonable jury could return a verdict" in Lanier's favor. *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). A general objection that an opposing party's evidence is incredible, like the one Lanier raises here, is insufficient to overcome summary judgment. Lanier has cited no authority that a party can create a disputed issue of material fact simply by asserting that the opposing party's declarations are untrustworthy.

Here, although Lanier attempts to discredit the opposing party's evidence, he offers no evidence that would support a finding in his favor. As the district court noted, he failed to "present evidence of *any* consumer who received a loan modification substantially reducing their monthly payment or who otherwise was satisfied with Defendants' services." Order at 39 (Doc. 281). Thus, there was no

---

[11] Lanier notes, for example, that one attorney stated she could not recall hearing the names Robles or Rennick, despite having signed a contract bearing those defendants' names.

evidence for the district court to "weigh" against the FTC's evidence in deciding the summary judgment motion.

### 3.    The District Court Properly Concluded There Was a "Common Enterprise."

Lanier argues that the district court incorrectly found the existence of a common enterprise.  Under the FTCA, a corporate entity can be held liable for the conduct of other entities where "the structure, organization, and pattern of a business venture reveal a common enterprise or a maze of integrated business entities."  *See F.T.C. v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1271 (M.D. Fla. 2012) (internal quotation marks omitted).  To make this determination, courts consider a variety of factors, including whether the businesses:  share office spaces and employees, commingle funds, coordinate advertising efforts, and operate under common control.  *See id.*

Here, Lanier takes issue with the district court's statements that he "conceded his supervisory authority" over two of the "staffing" agencies— Pinnacle and DOLMF—and that he "continued to be actively involved in [the D.C. firms'] management."  Order at 43-44, 50 (Doc. 281).  Lanier disputes that he had authority over the staffing agencies and disagrees that he managed the D.C. firms.

Regardless of how Lanier chooses to characterize his relationships with the staffing agencies and the D.C. firms, the evidence shows that he was "squarely at the center of [the] deceptive enterprise."  *Id.* at 74.  Lanier offered no evidence to

dispute that he and his co-defendants set up the D.C. firms, that he administered the "of counsel" network on behalf of those firms, that he allowed the firms to access his accounts to process consumer payments, or that he continued to deal with the principals of the firms as "friends." *Id.* at 49-50. Therefore, Lanier's denial is insufficient evidence "for a jury to return a verdict" in his favor, and hence summary judgment was appropriate. *Anderson*, 477 U.S. at 249.

### 4. Lanier's Use of the "Economic Stimulus" Flyer Is Not a Material Fact Sufficient to Preclude a Finding of Summary Judgment.

Finally, Lanier argues that the district court erred in finding that "the most egregious example of deceptive conduct by Lanier Law and the DC [firms] [was] the use of the Economic Stimulus Flyer." Order at 51 (Doc. 281). Lanier argues that the district court incorrectly determined that he had used the Flyer, in light of his testimony denying "any involvement with any marketing materials." Appellant's Br. at 38 (emphasis omitted). He contends that this dispute about whether he was personally involved with the Flyer required the district court to deny the FTC's summary judgment motion.

Even assuming this denial created a dispute of fact, whether Lanier personally "used" the Flyer is not an issue of *material* fact, because its resolution does not "affect the outcome of the suit." *Anderson*, 477 U.S. at 248. Indeed, to establish Lanier's individual liability, the FTC needed to show either that Lanier "participated directly in the [deceptive] practices or acts," or that he "had authority

19

to control them." *F.T.C. v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014) (alteration in original) (internal quotation marks omitted).  Authority to control "may be established by active involvement in business affairs and the making of corporate policy and by evidence that the individual had some knowledge of the practices."  *Id.* (internal quotation marks omitted).  There is no genuine issue of material fact that Lanier had authority to control his co-defendants such that he can be held liable for *their* use of the Flyer.  Accordingly, whether Lanier personally used the Flyer is of no consequence for his liability.  Thus, the district court's determination that Lanier was individually liable for "the deceptive acts of the common enterprise" was appropriate.  Order at 72 (Doc. 281).

## IV.   CONCLUSION

For these reasons, we affirm the district court's order granting the motion for summary judgment.

**AFFIRMED.**