[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11172
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00571-RH-CAS

HEATHER OLSON,

Plaintiff - Appellee,

versus

BENJAMIN J. STEWART,
in his official capacity as sheriff Madison County, Florida,

Defendant,

JASON WHITFIELD,
in his official capacity,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 12, 2018)

Before MARTIN, JULIE CARNES, and O'SCANNLAIN,[*] Circuit Judges.

MARTIN, Circuit Judge:

Deputy Sheriff Jason Whitfield appeals the District Court's decision to deny him qualified immunity on Heather Olson's claims of false arrest under federal and state law. Accepting Ms. Olson's version of the facts, she has alleged a clearly-established constitutional violation on these claims, and we therefore affirm the ruling of the District Court.[1]

## I.

We review de novo a District Court's decision denying qualified immunity at summary judgment. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). In conducting that review, we must "resolve all issues of material fact in favor of the plaintiff." Thornton v. City of Macon, 132 F.3d 1395, 1397 (11th Cir. 1998) (per curiam). That means we must believe Ms. Olson's evidence, Evans v. Stephens, 407 F.3d 1272, 1277 (11th Cir. 2005), and "construe the facts and draw all inferences in the light most favorable" to her, Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006). Thus, our analysis "must begin with a description of the facts in the light most favorable to the plaintiff." Id. "We then answer the legal

---

[*] Honorable Diarmuid F. O'Scannlain, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] The District Court determined Deputy Whitfield was "not entitled to qualified immunity under a given set of facts." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1250 n.3 (11th Cir. 2013). This court has jurisdiction over Deputy Whitfield's interlocutory appeal of that ruling. See id.

question of whether the defendant[] [is] entitled to qualified immunity under that version of the facts." Thornton, 132 F.3d at 1397.

## II.

On the morning of December 8, 2012, Ms. Olson was awakened in her home by the sound of a door slamming. She heard loud, angry yelling outside her bedroom. She got out of bed, put on a pair of blue shorts and a bra, then left her room.

When walking down the hallway outside her bedroom, Ms. Olson saw three uniformed police officers and several of her houseguests standing at the kitchen table. Unbeknownst to Ms. Olson, two people temporarily staying in her home, Naomi Fritz, and her mother, Betty Fritz,[2] had an argument that became physical, leaving Naomi with a red mark on her chest. Also unbeknownst to Ms. Olson, Betty had called 911 to ask for police assistance in moving her belongings out of Ms. Olson's house, which she said she couldn't do alone due to a "big family fight."

Ms. Olson asked her housemates if they let the officers in. They said they did not. She asked the officers what they were doing in her house. The officers responded that they did not know. She asked the officers who let them in. "No

---

[2] Because they share the same last name, we will refer to Betty Fritz and Naomi Fritz by their first names.

one," they said.  Addressing everyone, Ms. Olson said, "Get the fuck out—I did not invite you-all in here."[3]

Ms. Olson began walking back toward her bedroom to get a shirt.  Deputy Brad Johnson stopped Ms. Olson and asked what she was doing.  Ms. Olson told Deputy Johnson that she was getting a shirt, and he allowed her to go ahead.

After getting dressed, Ms. Olson walked outside.  As soon as she left the house, Deputy Whitfield grabbed her from behind, slammed her against a brick wall, and shoved her across the yard.  Due to a preexisting back injury, Ms. Olson had a large scar on her left leg that was clearly visible.  She also had a pin in her hip, and she couldn't walk quickly or easily without pain.  Two of her housemates yelled to Deputy Whitfield that Ms. Olson had a metal pin in her hip.  Ms. Olson told Deputy Whitfield she was in pain because of the way he was handling her.

---

[3] Deputy Whitfield alleges that he ordered everyone out of the house.  This allegation is disputed on the record before us, because it contradicts the narrative Ms. Olson offered in her own sworn affidavit, her deposition testimony, and that of Naomi.  We are aware that the District Court found that it was "undisputed that the officer gave the command."  The only record support for that conclusion is Ms. Olson's unverified complaint.  Pleadings, of course, "are only allegations, and allegations are not evidence of the truth of what is alleged."  Wright v. Farouk Sys., Inc., 701 F.3d 907, 911 n.8 (11th Cir. 2012); see also Fed. R. Civ. P. 11(b)(3), (4) (describing facts alleged in pleadings as "factual contentions").  We therefore consider this fact disputed for the purposes of summary judgment.  See Feliciano, 707 F.3d at 1252 n.5 (noting that we may "disregard a district court's determination of the facts for summary judgment purposes and determine those facts ourselves"); see also Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 849 n.6 (11th Cir. 2012) (per curiam) (unpublished) (holding that there was "no merit to Defendants' argument that [plaintiff] was bound by factual allegations in her unverified complaint to the extent they are inconsistent with her sworn statements submitted at summary judgment").

After pushing Ms. Olson across the yard, Deputy Whitfield pushed her onto the hood of a patrol car, shoved his knee into her lower back, twisted her arms behind her back, and handcuffed her. Ms. Olson asked Deputy Whitfield why he was putting his knee in her back and said, "That's all right, when I get out, that bitch won't be in my house and you're giving me a hell of a lawsuit." Deputies placed Ms. Olson in the patrol car and drove off. As a result of the force Deputy Whitfield used against her, Ms. Olson suffered bruising on her wrist and lower back, and her back injury was exacerbated.

After Ms. Olson was taken from the scene, the officers asked about what happened before they arrived. Along with other housemates, Naomi told the police that Ms. Olson had nothing to do with the argument, the fight, or the marks on her chest.

Ms. Olson was charged with disorderly conduct, but the charge was later dropped because of "insufficient evidence to prove the crime beyond a reasonable doubt."

## III.

Ms. Olson sued Deputy Whitfield under 42 U.S.C. § 1983 alleging violations of her federal constitutional rights as well as related rights under Florida law. The District Court granted Deputy Whitfield qualified immunity on each of Ms. Olson's claims except her federal and state false arrest claims. The District

5

Court ruled that, accepting Ms. Olson's facts, a reasonable jury could find there was no probable cause to arrest her. The District Court further observed that Deputy Whitfield's use of force would not have been excessive if Ms. Olson's arrest were lawful, but ruled that "[w]hen an officer has no reason to arrest an individual, the officer's use of force against the individual may be excessive, even when use of the same force would be constitutional in connection with a lawful arrest."

## IV.

At the time of Ms. Olson's arrest, "our binding precedent clearly established . . . that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures." See Skop v. City of Atlanta, 485 F.3d 1130, 1143 (11th Cir. 2007). Thus, an officer is entitled to qualified immunity for a false arrest claim only if "that officer had arguable probable cause, that is, where reasonable officers in the same circumstances and possessing the same knowledge as the [officer] could have believed that probable cause existed to arrest the plaintiff." Davis, 451 F.3d at 762 (quotations omitted). "Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime." Crosby v. Monroe Cty., 394 F.3d 1328, 1333 (11th Cir. 2004). We

therefore conduct the arguable probable cause analysis based on the facts Ms.

Olson alleged.  Davis, 451 F.3d at 763, 766.

Deputy Whitfield asserts he had arguable probable cause to arrest Ms. Olson

for two crimes under Florida law: resisting an officer without violence, Fla.

Stat. § 843.02, and disorderly conduct, Fla. Stat. § 877.03.[4]  Both arguments fail.

At the time of Ms. Olson's December 8, 2012 arrest, any reasonable officer

would have known that probable cause for a violation of § 843.02 could not be

based on mere words.  See Davis, 451 F.3d at 765–66.  Florida Statute § 843.02

provides that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the

execution of legal process or in the lawful execution of any legal duty, without

offering or doing violence to the person of the officer" commits a first-degree

misdemeanor.  For years before Ms. Olson's arrest, Florida courts had consistently

held that a "person's words alone can rarely, if ever, rise to the level of an

obstruction," unless an officer is legally detaining or executing process on the

speaker or requesting the speaker's "assistance with an ongoing emergency that

---

[4] In his opening brief, Deputy Whitfield does not assert that he had arguable probable cause to arrest Ms. Olson for assaulting Naomi.  Under this Court's precedent, he has waived this argument.  See Kelliher v. Veneman, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002).  Beyond that, and construing this record in the light most favorable to Ms. Olson, we know that Naomi said no officer bothered to ask her who hit her until Ms. Olson had been driven away in handcuffs.  Thus, Deputy Whitfield did not conduct a sufficient investigation to legally arrest Ms. Olson for assaulting Naomi.  See Kingsland v. City of Miami, 382 F.3d 1220, 1228–29 (11th Cir. 2004) (holding that, before making arrests, officers must conduct reasonable investigations, and that "elect[ing] not to obtain easily discoverable facts" before making an arrest amounts to an unreasonable investigation).

presents a serious threat of imminent harm to person or property." See D.G. v. State, 661 So. 2d 75, 76–77 (Fla. 2d DCA 1995) (collecting cases); see also Davis, 451 F.3d at 765–66 (same). "[T]he use of 'oppose' in conjunction with 'obstruct' manifests a clear and unambiguous legislative intent to proscribe only acts or conduct that operate to physically oppose an officer in the performance of lawful duties." Wilkerson v. State, 556 So. 2d 453, 455–56 (Fla. 1st DCA 1990).

Likewise, on December 8, 2012, any reasonable officer would have known that probable cause for disorderly conduct[5] could not be based on mere words except in very limited circumstances. See Davis, 451 F.3d at 766 (collecting cases). The sole exceptions to this rule are words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace" and "words, known to be false, reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others." See State v. Saunders, 339 So. 2d 641, 644 (Fla. 1976) (quotation omitted and alteration adopted). As with § 843.02, conduct that physically obstructs an officer's ability to make an arrest may amount to disorderly conduct. See, e.g., C.L.B. v. State, 689 So. 2d 1171, 1172 (Fla. 2d DCA 1997) (affirming disorderly conduct adjudication

---

[5] The disorderly conduct statute, Fla. Stat. § 877.03, reads:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree . . . .

where youth approached officer and arrestee closely enough that officer had to push youth aside and tell him to stay away).  Thus, "to constitute a violation of section 877.03, there must be evidence of something more than loud or profane language or a belligerent attitude."  Miller v. State, 667 So. 2d 325, 328 (Fla. 1st DCA 1995).

Based on Ms. Olson's account, Deputy Whitfield did not have arguable probable cause to arrest her.  After their first encounter in the kitchen, Ms. Olson did five things before Deputy Whitfield arrested her: (1) said to her housemates and the officers "Get the fuck out—I did not invite you-all in here"; (2) went to her room to get a shirt so that she could be appropriately clothed to join them outside; (3) secured permission from Deputy Johnson to get dressed on her way to doing so; (4) put on a shirt; and (5) went outside.

None of these actions—including her profane command—supply arguable probable cause under Florida law for the arrest of Ms. Olson here.  Florida courts have addressed suspects who far more aggressively challenged police who are investigating them and found those suspects did not engage in obstruction or disorderly conduct.  See, e.g., D.G., 661 So. 2d at 75–77 (holding that, where officers were investigating suspect for burglary, his loud and obnoxious protests, refusal to answer questions, and encouraging his mother not to cooperate with the officers was not obstruction); Miller, 667 So. 2d at 326–27 (holding that, where

9

officer had been called to respond to domestic violence allegations, suspect's loud arguing and cursing with police and others, which continued despite police ordering him to calm down, was not disorderly conduct).[6]

Therefore, the District Court properly denied qualified immunity to Deputy Whitfield on Ms. Olson's federal false arrest claim. Our analysis applies equally to Ms. Olson's state law false arrest claim. See Sharp v. City of Palatka, 529 F. Supp. 2d 1342, 1352–53 (M.D. Fla. 2007) (indicating that the "Florida courts have looked to the federal bench for direction when ruling on qualified immunity issues" and applying the arguable probable cause analysis to a state law malicious prosecution claim). Thus, we affirm the District Court's denial of qualified immunity to Deputy Whitfield on Ms. Olson's federal and state law false arrest claims.

## V.

Ms. Olson does not challenge the District Court's ruling on her separately-pled excessive force claim. Therefore, it is not before us on appeal. See

---

[6] Ms. Olson's statement while Deputy Whitfield was pushing her onto the hood of the patrol car—"That's all right, when I get out, that bitch won't be in my house and you're giving me a hell of a lawsuit"—doesn't change this analysis. First, to the extent this can be deemed resistance, Florida courts allowed Ms. Olson "every right to resist without violence" while Deputy Whitfield was unlawfully arresting her. See J.G.D. v. State, 724 So. 2d 711, 711–12 (Fla. 3d DCA 1999); see also English v. State, 293 So. 2d 105, 107 (Fla. 1st DCA 1974). Second, her words did not amount to disorderly conduct under Florida law. See, e.g. Clanton v. State, 357 So. 2d 455, 456–57 (Fla. 2d DCA 1978) (hollering that an officer did not have the right to open a car door, that he did not have a "Goddamn search warrant," and that the man the officer was investigating "didn't have to tell [the officer] anything" did not qualify as disorderly conduct).

10

Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to address merits of a cross-appeal because appellant did not elaborate arguments on the issue in its brief).

But, before concluding, we briefly address Deputy Whitfield's appellate briefing on Ms. Olson's excessive force claim. Deputy Whitfield argues that the force he used was not excessive, apparently based on his understanding that the District Court ruled against him on Ms. Olson's separately-pled excessive force claim. His assumption, as Ms. Olson notes, is not correct. In fact, the District Court's ruling on the excessive force claim was in favor of Deputy Whitfield.

However, the District Court did rule that, even if Deputy Whitfield is entitled to qualified immunity on Ms. Olson's separately-pled excessive force claim, his use of force would remain relevant to the amount of damages Ms. Olson might recover on her false arrest claims. This comports with our Circuit precedent. See Bashir v. Rockdale Cty., 445 F.3d 1323, 1332 (11th Cir. 2006) ("[T]he damages recoverable on an unlawful arrest claim include damages suffered because of the use of force in effecting the arrest.") (quotation omitted and alteration adopted).

## VI.

The District Court correctly denied qualified immunity to Deputy Whitfield on Ms. Olson's false arrest claims and correctly ruled that Ms. Olson may recover damages for the force Deputy Whitfield used during her arrest.

**AFFIRMED.**