[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12563

Non-Argument Calendar

_____

AKEEM MUHAMMAD,

Plaintiff-Appellant,

*versus*

JULIE L. JONES,
individual capacity,
JOHNNY FRAMBO,
in his official and individual capacity Florida Department of Corrections State Chaplain,
SHANE PHILLIPS,
in his individual capacity,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
CHIEF, BUREAU OF CONTRACT MANAGEMENT AND

2                    Opinion of the Court                    22-12563

MONITORING, et al.,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-00212-HLA-JBT

_____

Before ROSENBAUM, JILL PRYOR, and BLACK, Circuit Judges.

PER CURIAM:

Akeem Muhammad, a state prisoner proceeding *pro se*, filed a complaint bringing claims under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, against Florida Department of Corrections (FDOC) and Florida State Prison (FSP) officials, alleging violations of his rights under the Free Exercise Clause of the First Amendment and the RLUIPA. His claims centered around the timing and nutritional adequacy of meals and medication provided to inmates during Ramadan. He appeals the district court's orders: (1) granting in part the defendants' motion to dismiss; (2) entering summary judgment in favor of the defendants on his First Amendment and RLUIPA claims; and (3) denying his motion to reimburse service costs under Fed. R. Civ. P. 4(d)(2). Although we partially affirm

based on qualified immunity, we reverse and remand in part for further proceedings.

## I. BACKGROUND

Muhammad has been a practicing Muslim since 1996. As part of his faith, he observes Ramadan, an annual month-long period of prayer and fasting. Muhammad believes he must abstain from consuming food, water, and medication during the day during Ramadan. Importantly for this case, Muhammad believes the fasting period begins at astronomical twilight, which precedes sunrise. He must consume a nutritionally adequate, meatless, Kosher diet during two meals each day—one pre-fast meal before astronomical twilight and one post-fast meal after sunset. Muhammad also takes medication for several medical conditions, which is typically provided by prison officials in the morning after astronomical twilight and in the afternoon. He must take his medication in presence of medical staff, and his doctor will discontinue treatment if he refuses his medication for three days.

When Muhammad filed this prisoner civil rights action in February 2018, he was being detained at FSP. He alleged prison officials provided his pre-fast meal and medication before sunrise but not before astronomical twilight, leaving him to choose between his religious beliefs and receiving adequate nutrition and medical care. As a result, he stopped fasting 17 days into Ramadan in 2017 and has allegedly been unable to fast in the years since then. He alleged that his qualitative religious experience was destroyed, and he suffered serious physical injuries, including "exacerbated

hypertension, exacerbated [Irritable Bowel Syndrome (IBS)], severe dehydration, severe physical pain, severe fatigue, and severe lethargy."

Muhammad sued four FSP employees in their official capacities: Food Service Director Jeffery Andrews; two vocational instructors, R. Davis and H. Sellers; and a correctional officer, A. McGregor. Muhammad also sued four FDOC employees in their official and individual capacities: Julie Jones, the FDOC's Secretary; Johnny Frambo, Chaplaincy Services Administrator; Shane Phillips, Chief of the Bureau of Contract Management and Monitoring; and Craig McCormick, Public Health Nutrition Program Manager. Three of the FDOC defendants were later substituted in their official capacities: Mark Inch for Jones; Angela Gaskins for Phillips; and Brenda Patterson for McCormick.

As for relief, Muhammad sought (1) an injunction against Jones in her official capacity only; (2) a declaratory judgment that Frambo, Phillips, McCormick, and the FSP defendants violated the RLUIPA in their official capacities; and (3) compensatory, nominal, and punitive damages from the original FDOC defendants in their individual capacities—Jones, Frambo, Phillips, and McCormick—for violating his First Amendment rights. Muhammad did not seek monetary damages under the RLUIPA, nor did he seek monetary damages against any defendant in an official capacity.

A month after filing the operative complaint, Muhammad informed the district court that he had been transferred from FSP to another state facility and conceded the transfer mooted his

official capacity RLUIPA claims against the four FSP defendants—Andrews, Davis, Sellers, and McGregor.  In response to that stipulation and the defendants' motion to dismiss, the district court dismissed the claims against Andrews, Davis, Sellers, and McGregor as moot.  It also denied qualified immunity on the First Amendment claim, but it dismissed Muhammad's claim for compensatory damages based on the physical injury requirement under 42 U.S.C. § 1997e(e).

The defendants answered, again asserting qualified immunity as an affirmative defense to all monetary damages, and moved for summary judgment.

In March 2022, the court granted summary judgment in favor of the remaining defendants.  It found they were entitled to qualified immunity as to nominal damages and that Muhammad was not entitled to recover punitive damages because it found the "Defendants' statements made under penalty of perjury to be more credible than Plaintiffs unsubstantiated claims that these Defendants 'maliciously participated' in refusing to accommodate his religious beliefs during Ramadan in 2017."  With respect to the FDOC defendants on the RLUIPA claim, the district court concluded:

> Statements made by the plaintiff are insufficient to establish that that plaintiff's religious practice has been substantially burdened. . . . Because Defendants have provided support that they made substantial efforts to accommodate Plaintiff's religious beliefs and Plaintiff has not met his burden to support that his religious

exercise was substantially burdened—that his physical health was detrimentally affected by not being able to fast in the periods as required to observe Ramadan—and having no material facts at issue, judgment is due to be entered in favor of Defendants.

After the court denied Muhammad's motion to alter or amend the judgment, the defendants moved for taxation of costs. Muhammad then appealed from the final judgment, and the district court stayed the costs motion pending the outcome of this appeal.[1]

## II. DISCUSSION

We take the following issues in turn: (1) whether Muhammad's transfer from FSP to a different Florida prison mooted his claims and, if not, whether the defendants' policies substantially burdened his religious exercise under the RLUIPA; (2) whether qualified immunity precluded Muhammad's First Amendment claim; and (3) whether Muhammad was entitled to reimbursement for service costs.[2]

---

[1] We remand this case to the district court for further proceedings on the merits, so Muhammad's motion to relinquish jurisdiction for the district court to rule on the defendants' motion for costs is **DENIED AS MOOT**. In any event, the motion to relinquish jurisdiction was unnecessary because this appeal did not prevent the district court from ruling on collateral matters. *See Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999).

[2] Our review of these issues is largely *de novo*. *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1268 (11th Cir. 2006) (mootness); *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) (motion to dismiss for failure to

### A. RLUIPA Claim for Prospective Relief

### (i) Mootness

First, Muhammad contends his transfer from FSP did not moot his claims, and we agree to the extent he seeks prospective relief on the FDOC's statewide policies. "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief," even when "there is no assurance that he will not be returned to the jail." *McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding that an inmate's claim was moot where he challenged "unconstitutional conditions in a single jail where [he] is no longer incarcerated"). But a transfer between state prisons does not moot a request for injunctive relief against the head of the state prison system. *See Hardwick v. Brinson*, 523 F.2d 798, 799-801 (5th Cir. 1975).[3]

As Muhammad acknowledged in the district court, the claims against the FSP defendants were mooted by his transfer

---

state a claim); *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022) (summary judgment based on qualified immunity); *Knight v. Thompson*, 797 F.3d 934, 942 (11th Cir. 2015) (legal conclusion that a prison policy comports with RLUIPA). We also review the legal interpretation of Civil Rule 4 *de novo*, *see Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 920 (11th Cir. 2003), but we review the denial of a motion for costs for abuse of discretion, *see Cochran v. EI duPont de Nemours*, 933 F.2d 1533, 1540 (11th Cir. 1991).

[3] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

from FSP.[4]  *See McKinnon*, 745 F.2d at 1363.  But injunctive relief can still be granted with respect to the FDOC defendants because an injunction against them would apply to any state prison in Florida.  *See Hardwick*, 523 F.2d at 800-01.  We read the district court's order to be consistent with this understanding.  Because there is still a live controversy as to injunctive relief against the FDOC defendants, we turn to whether summary judgment was proper.

### (ii) Summary Judgment Order

Muhammad argues that, viewing the evidence in the light most favorable to him, the district court erred by finding the FDOC's refusal to accommodate his Ramadan beliefs did not place a substantial burden on his religious exercise.  We agree.

The RLUIPA protects inmates "who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 710 (2005).  "While the First Amendment requires only that prison restrictions be reasonably related to legitimate penological interests," *Davila v. Gladden*, 777 F.3d 1198, 1212 (11th Cir. 2015), "[t]he RLUIPA provides greater religious protection than the First Amendment," *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022).

---

[4] Muhammad sued the FSP defendants only in their official capacities and for declaratory judgment.  His claims for monetary damages, which are addressed below, were limited to the FDOC defendants.

To make a claim under the RLUIPA, the plaintiff must first show that a government rule, regulation, practice, or policy substantially burdens his exercise of religion. *Id.* If successful, it becomes the defendant's burden to show that the challenged directive is the "least restrictive means of furthering a compelling government interest." *Id.* (quotation marks omitted); *see also* 42 U.S.C. § 2000cc(a). A plaintiff's religious exercise is substantially burdened when the prison's policy makes him choose between violating that policy—and risk facing disciplinary action—or violating his religion. *See Holt v. Hobbs*, 574 U.S. 352, 361 (2015). While a "substantial burden must place more than an inconvenience on religious exercise," "modified behavior, if the result of government coercion or pressure, can be enough" to show a substantial burden on religious exercise. *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 829-31 (11th Cir. 2020) (quotation marks omitted).

When considering summary judgment motions, "courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [they must] credit the nonmoving party's version." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (quotation marks omitted). While an affidavit may not be conclusory, nothing prohibits an affidavit from being self-serving, and a litigant's self-serving statements based on personal knowledge or observation can defeat a summary judgment motion. *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (*en banc*). "Even if a district court believes that the evidence

presented by one side is of doubtful veracity," "[a] case should be put to the jury if there is any genuine issue of material fact, including one created solely by the testimony of a party." *Feliciano*, 707 F.3d at 1247, 1252 (quotation marks omitted).

First, the district court improperly weighed evidence at summary judgment. *See id.* at 1247, 1252. When construing the evidence in the light most favorable to Muhammad, there is more than enough for his RLUIPA claim to survive summary judgment.[5] No one disputes the sincerity of Muhammad's religious belief that he must begin his Ramadan fast at astronomical twilight. Moreover, Muhammad stated in a sworn affidavit that he was woken up for his morning meals and medication during Ramadan between 5:00 a.m. and 5:30 a.m., which was after astronomical twilight, and this forced him to forgo his medication and eat only the dinner meal. This is also consistent with Jones's interrogatory response, which stated the 2017 Ramadan accommodations for Muslim inmates included "providing them with prescribed medications (single dose) and a pre-fasting meal *between* astronomical twilight and civil twilight or at approximately 60-80 minutes before sunrise." (emphasis added).

More fundamentally, the district court "misunderstood the analysis that RLUIPA demands." *Holt*, 574 U.S. at 361. For a person

---

[5] Muhammad did not file a cross-motion for summary judgment, so we construe the evidence in the light most favorable to him and express no opinion about whether Muhammad might have prevailed had he moved for summary judgment.

holding the sincere religious belief that he must begin fasting at astronomical twilight, an FDOC policy and practice of providing pre-fast meals and medication after astronomical twilight pressured Muhammad to choose between adhering to his religious beliefs and receiving adequate nutrition and medication. *See Thai Meditation Ass'n of Ala., Inc.*, 980 F.3d at 829-30; *Dorman*, 36 F.4th at 1314. That is enough to satisfy his burden under the RLUIPA. The district court found the defendants provided Muhammad "a reasonable opportunity" to practice his religious beliefs and that the institutional guides and memoranda "reflects recognition of [Islam]'s requirements . . . during Ramadan." But this "improperly imported a strand of reasoning from cases involving prisoners' First Amendment rights." *Holt*, 574 U.S. at 361. Even if the FDOC's policies satisfied the religious needs of some Muslim inmates during Ramadan, that does not rebut Muhammad's showing that *his* religious beliefs were substantially burdened by those policies. *See id.* at 362.

The FDOC defendants then needed to show that providing pre-fast meals and morning medication after astronomical twilight is the least restrictive means of furthering a compelling government interest. *See Dorman*, 36 F.4th at 1313; 42 U.S.C. § 2000cc(a). The district court concluded that the defendants "have demonstrated that the policy at issue" met that standard, and it previously alluded to "the prison officials' interests in providing safety and order." But the court did not identify any specific interest raised by the FDOC defendants, explain why that interest would be compelling, or explain how its policies were the least restrictive means of

furthering that interest.  And, as in the district court, the FDOC defendants have failed on appeal to identify any such compelling interest.  *See Holt*, 574 U.S. at 364 (noting our obligation to consider whether exceptions are required under the RLUIPA without unquestioning deference to a state's department of corrections).

Accordingly, we reverse the grant of summary judgment in favor of the FDOC defendants on Muhammad's RLUIPA claim and remand for further proceedings.  We now turn to Muhammad's request for monetary damages.

### B. First Amendment Claim for Monetary Damages

Muhammad also sought monetary damages from the FDOC defendants in their individual capacities on his First Amendment claim.  The district court rejected (a) compensatory damages for failure to satisfy the physical injury requirement under § 1997e(e); (b) punitive damages because the defendants' sworn statements about a lack of malicious intent were "more credible" than Muhammad's "unsubstantiated" claims; and (c) nominal damages based on qualified immunity.

On appeal, Muhammad contends he suffered more than a *de minimis* injury under § 1997e and that the district court erred in finding then-Secretary Jones and Chaplaincy Services Administrator Frambo[6] were entitled to qualified immunity because it

---

[6] Muhammad has abandoned any challenge to the district court's qualified immunity analysis as to the other defendants.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (explaining that a party on appeal

resolved factual disputes against Muhammad at summary judgment. Even if we agree that the district court improperly weighed evidence at summary judgment, we can affirm on any ground supported by the law and the record. *See Feliciano*, 707 F.3d at 1251-54 (affirming on other grounds after holding the district court improperly weighed evidence).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1353 (11th Cir. 2022) (quotation marks omitted). It is undisputed that Jones and Frambo were acting within their discretionary authority, so the burden shifts to Muhammad to show that qualified immunity is not appropriate. *Id.* at 1354. The Supreme Court has outlined four factors that frame our First Amendment inquiry, but the fundamental issue is whether the prison regulation is reasonably related to legitimate penological interests. *Rodriguez v. Burnside*, 38 F.4th 1324, 1331 (11th Cir. 2022) (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). Unlike the RLUIPA framework, which provides for a "focused inquiry" assessing "whether a prison policy *as applied to an individual prisoner* is the least restrictive means of furthering a compelling governmental interest," the First Amendment inquiry under *Turner* "makes no

---

abandons a claim if he fails to plainly and prominently raise it, such as by devoting a discrete section of his argument to that claim).

comparable, individualized demands." *Id*. at 1332-33 (quotation marks omitted).

"Even if the prison's policies were improper, the prison officials would be entitled to qualified immunity" "unless it is shown that they violated a constitutional right that was clearly established at the time of the challenged action." *Id*. at 1134-35 (quotation marks omitted).  It is clearly established that a prisoner is entitled to reasonably adequate food, that is "[a] well-balanced meal, containing sufficient nutritional value to preserve health." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).  And a prison should accommodate an inmate's religious dietary restrictions, subject to budgetary and logistical limitations, when a belief is truly held.  *See Martinelli v. Dugger*, 817 F.2d 1499 (11th Cir. 1986), abrogation recognized by *Harris v. Chapman*, 97 F.3d 499, 503 (11th Cir. 1996); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (explaining prison regulations should be judged under a reasonableness test, not the more stringent least restrictive means test).

We need not decide whether there was a violation because Muhammad has not met his burden on appeal of identifying decisions of the U.S. Supreme Court, this Court, or the Florida Supreme Court that would "make it obvious to all reasonable government actors, in the defendant's place," that establishing FDOC policies and guidance providing for pre-fast Ramadan meals and medication before sunrise but after astronomical twilight violated

federal law.[7] *Crawford v. Carroll*, 529 F.3d 961, 977-78 (11th Cir. 2008) (quotation marks omitted); *see Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009). *Turner* does not ask "courts to fine tune a prison's policy to accommodate a prisoner's individual request," and Muhammad "has not shown that a reasonable official would have had fair and clear warning that his particular conduct was unlawful and unconstitutional." *Rodriguez*, 38 F.4th at 1334 (quotation marks omitted).

In short, "qualified immunity, pled by [Jones and Frambo] as an affirmative defense, should have been the analysis used to grant them summary judgment," and we can affirm as to all monetary

---

[7] Muhammad largely failed to argue that the officers violated any clearly established law, and he may have "forfeited any such argument—which is reason enough to affirm the district court's qualified-immunity finding." *Christmas*, 51 F.4th at 1354, n.4. At most, Muhammad included a string citation for the proposition that "[t]he RLUIPA and First Amendment give Muslim prisoners the right to fast daily during Ramadan[] and require prison officials to accommodate those daily Ramadan fasts." The only case he cites from this Court is *Saleem v. Evans*, 866 F.2d 1313, 1314 (11th Cir. 1989). *Saleem* is not relevant, but it attached an unpublished opinion from *Diaab v. Green*, 794 F.2d 685 (11th Cir.1986) (table). Even if an unpublished opinion attached to a published opinion could show a clearly established right, the *Diaab* panel remanded for further proceedings because the district court should not have dismissed the case without service on the defendants and a hearing on the sincerity of the plaintiff's alleged religious beliefs and the state's justification for regulating the manner in which those beliefs are practiced. *Id.* at 1317-18. Notably, on remand, the district court in *Diaab* granted the prison officials qualified immunity from damages, which we affirmed. *Id.* at 1314 n.2. Neither *Saleem* nor *Diaab* support reversal on qualified immunity in this procedural posture.

16                    Opinion of the Court                    22-12563

damages on that basis.  *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998).

### C. Service Costs

Finally, Muhammad contends the district court erred in denying his motion for reimbursement of the costs to serve Jones, Frambo, Andrews, Sellers, and McGregor after they refused to waive service under Federal Rule of Civil Procedure 4(d)(2).

Civil Rule 4 distinguishes between serving individuals, Fed. R. Civ. P. 4(e), and "[a] state, a municipal corporation, or any other state-created governmental organization," Fed. R. Civ. P. 4(j).  The distinction is relevant in this case because Rule 4(d)(2)'s mandatory waiver provision[8] generally applies to individuals—thereby shifting service costs to individual defendants—but not state and local governments.  *See* Fed. R. Civ. P. 4(d); *Lepone-Dempsey v. Carroll County Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007).

In opposing Muhammad's motion for costs, the defendants conceded that he "complied substantially" with the procedures to shift costs of service but argued they had good cause not to cooperate because Muhammad failed to state a claim against them.

---

[8] Federal Rule of Civil Procedure 4(d)(2) provides:

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant: (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Instead of addressing good cause, the district court reasoned that the defendants were sued in their official and individual capacities, so Muhammad's claim was against the state, and the state is not required to waive service under Rule 4(j). Muhammad disagrees, contending those defendants needed to be served individually under Rule 4(e) and should be required to reimburse his costs to serve them pursuant to Rule 4(d)(2).

We have not directly addressed whether, as Muhammad argues, a state official sued in an official capacity for prospective relief should be served under Rule 4(e) or (j).[9] But we need not reach that issue in this appeal because we have held that plaintiffs asserting § 1983 claims against a city and individual officers needed to properly serve each within the time provided by Rule 4(m). *Lepone-Dempsey*, 476 F.3d at 1281. That is, the plaintiffs needed to serve the city pursuant to Rule 4(j) and serve the individual defendants pursuant to Rule 4(e). *Id.*

---

[9] The First Circuit has held that a state officer, whether sued in an individual or official capacity, must be served under Rule 4(e) because the officer is bound by the judgment and can be held in contempt for disobeying a court order. *Caisse v. DuBois*, 346 F.3d 213, 216 (1st Cir. 2003) (citing *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 28-30 (1st Cir. 1988)). The Fifth Circuit "disagree[d] with the First Circuit's reading of rule 4, at least insofar as the First Circuit's reasoning subjects state officers to the mandatory waiver provisions of the rule." *Moore v. Hosemann*, 591 F.3d 741, 747 (5th Cir. 2009). Based on the 1993 Advisory Committee Note to Rule 4(d), the Fifth Circuit held that a state official sued in his official capacity for injunctive relief "is not subject to the mandatory waiver-of-service provisions of rule 4(d)." *Id.*

Although we did not address costs of service in *Lepone-Dempsey*, it follows that individual state defendants served under Rule 4(e) are subject to the failure-to-waive provision of Rule 4(d)(2) even if they are also sued in an official capacity.  This is consistent with how Rule 4 treats federal employees. *See* Fed. R. Civ. P. 4(i)(3) (providing that a United States officer sued in an individual capacity in connection with their official duties "(whether or not the officer or employee is also sued in an official capacity)" must be served under Rule 4(e)); Fed. R. Civ. P. 4 advisory committee's note to 2000 amendment (explaining that it was making explicit the understanding that federal employees sued individually must be served as individuals, invoking subdivision (e) and the waiver-of-service provisions of subdivision (d)).

Jones, Frambo, Andrews, Sellers, and McGregor were sued in their individual capacities, so they were subject to service under Rule 4(e) and the cost-shifting provision of Rule 4(d)(2).  Because they have not shown good cause for the failure to waive service, the court "must impose" the expenses Muhammad incurred in making service.  Fed. R. Civ. P. 4(d)(2); *see also* Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment (explaining that "sufficient cause should be rare" and a claim being "unjust" does not qualify as good cause for failure to waive service).  Accordingly, we reverse the denial of Muhammad's motion for reimbursement of service costs and remand for the district court to award costs under Rule 4(d)(2).

### III. CONCLUSION

Muhammad has alleged Florida prison officials forced him to choose between observing his religious beliefs during Ramadan and receiving adequate nutrition and medication.  The FDOC defendants sued in their individual capacities under § 1983 for First Amendment violations are entitled to qualified immunity.  On that basis, we affirm the grant of summary judgment in favor of Jones and Frambo as to monetary damages.  But we reverse the grant of summary judgment in favor of the FDOC defendants on Muhammad's RLUIPA claim for prospective relief and the denial of Muhammad's motion for costs of service.  We remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**